## PEOPLE v. DEGRAFFENREID

1. ARREST—WITHOUT WARRANT—PROBABLE CAUSE—SEARCH AND SEIZURE—VALIDITY.

Police officer's observation of two men, one of whom had a bulge in his pocket, loitering about a gasoline station at about 2 a.m. until all cars were gone, then approaching the attendant but leaving abruptly when a police scout car approached, was sufficient to establish probable cause to arrest, without a warrant, for attempted armed robbery and to validate a warrantless search of their persons incident to arrest (MCLA §§ 750.92, 751.29).

2. CRIMINAL LAW—ASSISTANCE OF COUNSEL—SHAM TRIAL—INEFFECTIVE COUNSEL.

The sham trial standard for granting relief from a final conviction on the ground of ineffective or incompetent counsel arises only when the trial was a sham, a farce shocking to the reviewing court, or when the purported representation was only perfunctory, in bad faith, sham or pretense or when there was inadequate opportunity for preparation and conference.

3. CRIMINAL LAW—INDIGENTS—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE.

Every defendant has the constitutional right to the "effective assistance" of counsel.

4. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE.

The right to effective assistance of counsel does not necessarily mean successful assistance and the possibility that a different attorney could have obtained a better result does not imply that the defendant has not had the effective assistance of counsel.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 25.
[2–10, 12–14, 16] 21 Am Jur 2d, Criminal Law §§ 315, 319, 321.
[11] 21 Am Jur 2d, Criminal Law § 219.
[15–17] 39 Am Jur, New Trial § 201 et seq.

5. CRIMINAL LAW—ASSISTANCE OF COUNSEL—SHAM TRIAL.

The sham trial standard focuses attention on the entire representation of an accused by his lawyer.

6. CRIMINAL LAW—ASSISTANCE OF COUNSEL—MISTAKE OF COUNSEL—SHAM TRIAL.

It cannot ordinarily be said that a trial was a sham where counsel made a mistake which conceivably convicted his client if, putting that mistake aside, the lawyer handled the case adequately.

7. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE—CONSTITUTIONAL LAW.

The constitutional right to the assistance of counsel does not guarantee an accused that his counsel will not make a big mistake but only that he will be represented by an adequately equipped attorney who will provide honest, conscientious, diligent representation.

8. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE—CONSTITUTIONAL LAW.

Mere error by counsel, however serious, will not ordinarily establish that counsel is inadequate in the constitutional sense and will rarely justify a finding that the representation was so inadequate as to make it tantamount to having no lawyer at all and a denial of the constitutional right to counsel.

9. EVIDENCE—SUPPRESSION—MOTION—TIMELINESS.

A motion to suppress evidence must be made, if at all, before trial if the facts supporting the claim of illegality are known before trial.

10. CONSTITUTIONAL LAW—ILLEGAL EVIDENCE—SUPPRESSION—DUE PROCESS—WAIVER.

The constitutional right to have illegally seized evidence suppressed is not so essential to due process that only the defendant himself can waive it; it can be waived by counsel's failure to make a timely objection.

11. CRIMINAL LAW—MISTAKE OF COUNSEL—CONSTITUTIONAL RIGHTS—FAILURE TO ASSERT—RELIEF.

Although defense counsel's failure to assert a constitutional right not so fully protected that only the defendant may waive it does not constitute deprivation of counsel, courts may, and in some cases, must grant relief where the mistake is of sufficient importance.

12. CRIMINAL LAW—NEW TRIAL—FAIR TRIAL—MISTAKE OF COUNSEL
—RELIEF.

A criminal defendant may be granted a new trial in fulfillment
of the constitutional guarantee of a fair trial where a mistake
of defense counsel has caused loss of a substantial right or
was of such proportions that it may have been decisive in the
defendant's conviction.

13. CRIMINAL LAW—ASSISTANCE OF COUNSEL—CONSTITUTIONAL LAW
—SHAM TRIAL.

The sham trial standard of measuring the constitutional ade-
quacy of an attorney's representation at trial is applicable
only where there is an assertion that the constitutional right
to counsel has been denied because of representation by a bad
lawyer and does not apply where a good attorney made a
bad mistake.

14. CRIMINAL LAW — NEW TRIAL — GROUNDS — SERIOUS MISTAKE —
DUTY OF COURT.

Courts, in deciding whether to grant a new trial in a criminal
case because of a serious mistake, must balance the avoidance of
purposeless retrials against defendant's rights and will not
ordinarily grant a new trial unless it appears that defendant
would be acquitted if the mistake is not repeated at the new
trial.

15. CRIMINAL LAW—NEW TRIAL—GUILT—RELEVANCY.

The court, in judging the probability of a defendant's acquittal
on retrial, should not weigh its own personal view of the
defendant's guilt or innocence.

16. EVIDENCE—EXCLUSIONARY RULE—ILLEGAL EVIDENCE—FAILURE TO
OBJECT.

Depriving a particular defendant of the exclusionary rule which
prevents the admission of illegally seized evidence, because
defense counsel failed to object, where the illegally seized
evidence was a significant factor in bringing about defendant's
conviction is unjust.

17. CRIMINAL LAW—NEW TRIAL—ILLEGAL EVIDENCE—FAILURE TO
SUPPRESS—SUFFICIENCY OF OTHER EVIDENCE.

A new trial in a criminal case will not be ordered on the ground
that illegally seized evidence was admitted in a case where
timely objection was not made where, even had the illegally
seized evidence been suppressed, defendant would assuredly be
convicted because of the other evidence against him.

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted Division 1 April 8, 1968, at Detroit. (Docket No. 4,242.) Decided October 30, 1969.

David Degraffenreid was convicted of possession of a motor vehicle which he knew or had reason to believe had been stolen. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Kenneth A. Webb,* for defendant on appeal.

Before: HOLBROOK, P. J., and LEVIN and PRATT,* JJ.

LEVIN, J. The defendant David Degraffenreid appeals his conviction of possession of a motor vehicle which he knew or had reason to believe had been stolen. MCLA § 257.254 (Stat Ann 1968 Rev § 9.1954). He contends that he is entitled to a new trial because of the admission in evidence of a registration card for the stolen automobile and incriminating papers taken from it.

The registration card for the stolen automobile was found in the defendant's possession following his arrest. He asserts that his arrest was illegal and that, consequently, the seizure of the card cannot be justified on the ground that it was taken incident to the arrest. The incriminating papers

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

were found in a warrantless search of the automobile several days after the defendant's arrest. He asserts that a warrant was required to validate the search.

We have concluded that the arrest was legal and, therefore, reject the objection made in regard to the registration card. No objection was raised by the defendant's trial counsel to the introduction of the incriminating papers found in the automobile. We have considered the claim of his appellate counsel that the defendant was denied the effective assistance of counsel when his constitutional right to have illegally-seized evidence suppressed was not recognized and protected and have concluded, for reasons later stated, that a new trial need not be ordered in this case.

I.

## Facts and Issues

The police were giving "special attention" to a gasoline station because it had been repeatedly robbed. At the trial, a police officer testified that at about 2 a.m. the attendant at the station hailed him and his partner and told them that two men (the defendant and Joseph Brown) had entered the ladies' restroom of the station and had been there quite awhile. The police assumed a position of surveillance and observed Brown and the defendant emerge from the restroom and stand alongside the building for approximately five minutes. After all cars had left the station Brown and the defendant approached one of the attendants. At that moment a scout car drove into the station on a routine check whereupon Brown and the defendant turned and headed away.

The officer further testified that as Brown and the defendant were walking away he observed a bulge

in Brown's rear pocket. Brown and the defendant were stopped. Brown was searched and a pellet pistol was found in his rear pocket. No weapon was found on the defendant. They were both arrested and taken to the precinct station house.

The registration card for the stolen vehicle was taken from the defendant's person at the station house. At the trial the defendant's attorney objected to the introduction of the registration card on the ground that the police did not have probable cause to arrest the defendant and, thus, did not have the right to search his person and seize the registration card incident to the arrest.[1]

We agree with the trial judge that there was probable cause to arrest the defendant. He and Brown had been observed loitering at 2 a.m. in the ladies' restroom of a frequently-robbed gasoline station. After remaining some time in the ladies' restroom they were seen standing for five minutes alongside the building. Only after all cars in the station had left did they approach the attendant and then they abruptly turned away when a police cruiser appeared. A bulge was seen in Brown's rear pocket before he was stopped. *Cf. Terry* v. *Ohio* (1968), 392 US 1 (88 S Ct 1868, 20 L Ed 2d 889). The police had reason to believe that, but for the happenstance that a police cruiser drove through the station, Brown and the defendant would have committed a felony. We need not decide whether there was sufficient evidence to convict Brown and the de-

---

[1] The sole challenge to the admissibility of the registration card is that the arrest was invalid. It has not been asserted either at the trial or here that the search went beyond the limited scope of a search incident to an arrest. *Cf. Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685). The facts regarding the search at the police station and the discovery of the registration card are not clearly developed in the record. We have not addressed ourselves to this question.

fendant[2] of attempted armed robbery;[3] it is enough to say that the police had probable cause to arrest them for that crime.[4]

In addition to the registration card, there were admitted in evidence papers found in the stolen car that were identified as belonging to the defendant. No search warrant had been obtained before the search and seizure of these papers. The defendant was arrested shortly after 2 a.m., September 7, 1966. The car was not located until September 8, 1966. When it was found at an intersection four or five blocks from the gasoline station, it was removed to the station house and the papers belonging to the defendant were found during a search conducted at the station house.

The defendant's trial counsel did not object to the introduction in evidence of the papers. The defendant's appellate counsel argues that had a timely motion to suppress been made the trial court would have been obliged to grant the motion. From this

[2] While mere presence, even with knowledge that a criminal offense is about to be or is being committed, is not enough to support a conviction of a person as an aider or abettor under the statute (MCLA § 767.39 [Stat Ann 1954 Rev § 28.979]; see *People* v. *Burrell* [1931], 253 Mich 321), such presence is enough to establish probable cause justifying an arrest.

[3] The elements of attempt are the specific intent to commit a particular crime and the doing of an overt act going beyond mere preparation toward its commission. See *People* v. *Bowen* (1968), 10 Mich App 1, concerning the question of whether entry upon the premises of the asserted victim is sufficient to show the doing of an overt act; as there stated (p 17) some courts have held it is where the accused person came armed.

[4] A peace officer may, without a warrant, arrest a person when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it. MCLA § 764.15 (Stat Ann 1954 Rev § 28.874).

The record does not show whether the police advised Brown and the defendant that they were being arrested for attempted armed robbery. The validity of their arrest is, however, to be measured against the entire knowledge of the arresting officers, *i.e.*, all the facts and circumstances of which they were aware immediately before they made the decision to arrest, and not solely on the grounds for arrest upon which they may have relied at that time. *Cf. People* v. *McDonald* (1968), 13 Mich App 226, 235.

postulate, the accuracy of which we need not decide,[5] the defendant's appellate counsel argues that the failure of trial counsel to object to the admission of the seized evidence deprived the defendant of the effective assistance of counsel and that the defendant should not on that account suffer loss of his right to have illegally obtained evidence suppressed.

## II.

### The Right to the Effective Assistance of Counsel

Once the right of the indigent to the assignment of counsel was recognized, the courts understandably insisted that the lawyer assigned be adequate to the task.[6] Without a minimum criterion of competence the right might prove in many cases to be meaningless. This led to the concept that an accused person is entitled to the "effective assistance of counsel,"[7] rounding out the newly defined constitutional right.

With increasing frequency, we are confronted with claims on appeal grounded on alleged errors of trial counsel. The claim that a convicted person was denied the effective assistance of counsel is frequently coupled with an assertion that he was thereby deprived of his constitutional right to counsel.[8]

---

[5] Compare *Glisson* v. *United States* (CA 5, 1969), 406 F2d 423, with *Schoepflin* v. *United States* (CA 9, 1968), 391 F2d 390, concerning a warrantless search of an impounded stolen automobile. See, also, *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777).

[6] *Cf. Brubaker* v. *Dickson* (CA 9, 1962), 310 F2d 30, 37.

[7] The development of this concept by the United States Supreme Court beginning with *Powell* v. *Alabama* (1932), 287 US 45, 71 (53 S Ct 55, 77 L Ed 158), is traced in *Schaber* v. *Maxwell* (CA 6, 1965), 348 F2d 664, 669. Similarly, see *United States, ex rel. Kelley,* v. *Rundle* (ED Pa, 1965), 242 F Supp 708, 709; *Commonwealth, ex rel. Washington,* v. *Maroney, infra,* fn. 8; *Mitchell* v. *United States* (CADC, 1958), 259 F2d 787.

[8] See, *e.g., Scott* v. *United States* (CA 6, 1964), 334 F2d 72, 73; *Cross* v. *United States* (CA 8, 1968), 392 F2d 360, 367; *Common-*

Such claims are measured against a strict standard; typical of the judicial statements is the following:

"It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation." *Williams* v. *Beto* (CA 5, 1963), 354 F2d 698, 704.[9]

The development of the sham trial standard is probably explainable in pragmatic terms. Every accused person cannot be represented by a lawyer of outstanding ability and experience. Some defendants are represented by comparatively inexperienced advocates. An inordinate number of cases would have to be retried unless claims that the accused was denied his right to counsel were measured against a strict standard. This consideration, no doubt, influenced the courts to back away from giving the words "effective assistance" their fullest possible meaning.

" 'Effective' assistance of counsel obviously means something other than successful assistance." *Mitchell* v. *United States* (1958), 104 App DC 57 (259 F2d 787, 789).

---

*wealth, ex rel. Washington,* v. *Maroney* (1967), 427 Pa 599 (235 A2d 349, 351), and cases cited in footnote 12.

See Effective Assistance of Counsel for the Indigent Defendant, 78 Harv L Rev 1434 (1965); Waltz, Inadequacy of Trial Representation as a Ground for Post Conviction Relief in Criminal Cases, 59 NWU L Rev 289 (1964); Anno: Incompetency of Counsel Chosen by Accused as Affecting Validity of Conviction, 74 ALR2d 1390.

[9] That brevity of time for preparation is just one factor to be evaluated in the light of all the circumstances, see *Commonwealth, ex rel. Washington,* v. *Maroney, supra* fn. 8. Compare *Coles* v. *Peyton* (CA 4, 1968), 389 F2d 224, where inadequacies in pretrial investigation and preparation by a public defender were held to require a new trial; similarly, see *Roberts* v. *Dutton* (CA 5, 1966), 368 F2d 465.

"The fact that a different or better result may have been obtained by a different lawyer does not mean that the defendant has not had the effective assistance of counsel." *Scott* v. *United States* (CA 6, 1964), 334 F2d 72, 73.

The sham trial standard focuses attention on the entire representation of the accused by his lawyer. Since most lawyers are conscientious and at least minimally adequate for the task to which they are assigned, few claims that a case was mishandled will be recognized as valid when measured against this standard.

Most post-conviction claims of disgruntled clients are indeed insubstantial. Those that have some foundation frequently can be legitimately rejected on the ground that the lawyer's conduct was proper "trial tactics."[10] Even where the lawyer makes an egregious mistake which conceivably convicted his client, ordinarily it cannot properly be said that the trial was a sham if, putting that mistake aside, the

[10] *McDonald* v. *United States* (CA 9, 1960), 282 F2d 737, 741 ("a matter of trial strategy"); *State* v. *Dennis* (1964), 43 NJ 418 (204 A2d 868, 873) ("strategy miscalculations and trial mistakes"). See, also, *Mitchell* v. *United States, supra* fn. 7, pp 792, 793.

In *Henry* v. *Mississippi* (1965), 379 US 443, 451 (85 S Ct 564, 13 L Ed 2d 408), *reh. den.* 380 US 926 (85 S Ct 878, 13 L Ed 2d 813), the Supreme Court remanded for a determination whether the failure to make objection in that case was a "deliberate choice" by counsel, *i.e.*, trial tactics. There are, of course, instances where it appears that counsel's failure to object was a deliberate choice with a "reasonable basis" for making that choice (*Commonwealth, ex rel. Washington,* v. *Maroney, supra* fn. 8, pp 352, 353; *cf. Brubaker* v. *Dickson, supra* fn. 6 (p 38). However, even where there is a reasonable basis for the attorney's decision, his decision may be motivated by a wish to avoid prejudicing his client by highlighting an objection; new trials have sometimes been ordered in such cases, see *People* v. *Harvey* (1968), 13 Mich App 211; *People* v. *Clarke* (1962), 366 Mich 209, 213, 214; *People* v. *Ignofo* (1946), 315 Mich 626, 640; *People* v. *Eglar* (1969), 19 Mich App 563.

In *State* v. *Cutcher* (1969), 17 Ohio App 2d 107 (244 NE2d 767, 769), the defendant's lawyer questioned him about a prior accusation of which he had been acquitted "for whatever imagined tactical or strategic trial reason, it is impossible, from the record, to ken"; for this and other ineptitude of trial counsel a new trial was ordered.

case was well handled or even adequately handled by the lawyer.[11] In this case it is not contended that, apart from the failure to seek suppression of the papers found in the stolen car, the defendant's trial counsel mishandled the case; it is not asserted that, viewed as a whole, the representation provided for the defendant or his trial was a sham.

The constitutional right to counsel does not guarantee an accused person that his lawyer will not make a big mistake. The constitution guarantees only that the accused person will enjoy representation by an attorney adequately equipped by his training in the law to undertake the case and who will diligently, conscientiously and honestly represent the accused person.[12]

The most able and conscientious lawyers make mistakes, sometimes big mistakes. Clearly, mere error of counsel, however serious, will not ordinarily establish that the lawyer making the mistake is inadequate in the constitutional sense. The fact that a lawyer does not, because of ignorance of a particular rule of law or misconception, miscalculation or misadventure, assert a particular defense will rarely, by itself, justify a finding that his representation was so inadequate that it was tantamount to the defendant having no lawyer at all, that the constitutional right to counsel has been denied.

It does not follow that relief should not be granted if a serious mistake is made by a lawyer deemed constitutionally adequate under the sham trial standard. See part IV, *infra.*

---

11 *Cf. Brubaker* v. *Dickson, supra* fn. 6, p 37.

12 See, *e.g., Cross* v. *United States, supra* fn 8; *Brubaker* v. *Dickson, supra* fn. 6; *MacKenna* v. *Ellis* (CA 5, 1960), 280 F2d 592, 599; *Williams* v. *Beto* (CA 5, 1963), 354 F2d 698, 705, 706. *Cf.* cases cited in footnote 21.

## III.

*The Fourth Amendment Right to Have Illegally-
Seized Evidence Suppressed May be Waived
by a Defendant's Lawyer; it Need Not be
Waived by the Defendant Himself*

There are certain rights which are so essential to
the concept of due process that no lawyer can waive
them for a defendant. For example, the defendant
alone can waive his right to jury trial[13] and his right
to counsel.[14] The defendant's waiver of a right so
fully protected will not be presumed from a silent
record; it must affirmatively appear that the waiver
was a deliberate choice by the accused person him-
self.

In this case we are confronted with the question
whether the constitutional right to have illegally-
seized evidence suppressed may be lost by its non-
assertion absent a showing that the accused person
himself was aware of the right and deliberately
chose not to assert it. In *Henry* v. *Mississippi*
(1965), 379 US 443 (85 S Ct 564, 13 L Ed 2d 408),
*reh den* 380 US 926 (85 S Ct 878, 13 L Ed 2d 813),
the United States Supreme Court held that a Mis-
sissippi court rule requiring contemporaneous ob-
jection to the admission of illegally-seized evidence
does not violate the defendant's Fourth Amendment
right to have such evidence suppressed.[15] The Mich-

---

13 MCLA § 763.3 (Stat Ann 1954 Rev § 28.856); *Patton* v. *United
States* (1930), 281 US 276, 312, 313 (50 S Ct 253, 74 L Ed 854,
70 ALR 263).

14 *Carnley* v. *Cochran* (1962), 369 US 506, 516 (82 S Ct 884, 8
L Ed 2d 70, 76); *cf. Chapman* v. *California* (1967) 386 US 18,
23 (87 S Ct 824, 17 L Ed 2d 705).

15 In *Henry* the Court stated that the question of when and
how defaults in compliance with State procedural rules can preclude
the Supreme Court's consideration of a Federal question is itself
a Federal question, that a litigant's procedural default in State pro-
ceedings does not prevent vindication of his Federal rights unless
the State's insistence on compliance with its procedural rule serves
a legitimate State interest, and that Mississippi's rule requiring con-

igan Supreme Court has ruled that where the facts supporting the claim of illegality are known before trial, a motion to suppress must be made, if at all, before trial. *People* v. *Ferguson* (1965), 376 Mich 90.[16]

We are satisfied from our review of *Henry* v. *Mississippi, supra,* and the decisions of the courts that have considered this question[17] that the right to have illegally-seized evidence suppressed is not a right which has been given such complete protection that it can be waived only by the defendant himself; it can be lost by the failure of a defendant's counsel to voice a timely objection.

This may well be a concession to practicality. A trial judge can readily determine whether an accused person has himself waived a jury trial or his right to counsel. In contrast, the circumstances surrounding the acquisition of evidence by the people may not be brought out when it is offered at the trial and for this or other reasons the fact that the evidence was illegally obtained, if it was, may not be apparent to a trial judge. To require automatically the retrial of every case where a constitutional right appears to have been overlooked, without re-

temporaneous objection serves such a legitimate State interest. See generally Hill, The Inadequate State Ground, 65 Colum L Rev 943 (1965); Brennan, Federal Habeas Corpus and State Prisoners: An Exercise in Federalism, 7 Utah L Rev 423 (1961).

16 In this case no motion to suppress was made before trial. A trial judge may, however, entertain a motion to suppress not timely made and that is what the trial judge chose to do in this case as to the registration card.

17 See *Barba-Reyes* v. *United States* (CA 9, 1967), 387 F2d 91, 93; *People* v. *Miller* (1966), 76 Ill App 2d 261 (222 NE2d 153, 156, 157); *Baynard* v. *State* (1968), 2 Md App 701 (237 A2d 71); *State* v. *Hays* (1966), 100 Ariz 371 (414 P2d 745); *State* v. *Graham* (1965), 97 Ariz 408 (401 P2d 141, 147). Cf. *People* v. *Johnson* (1967), 38 Ill 2d 399 (231 NE2d 447, 449). As to a failure to object to the admissibility of a confession, see *People* v. *Farmer* (1968), 380 Mich 198, 207; *State* v. *Mendes* (1965), 99 RI 606 (210 A2d 50, 55); *People* v. *Williams* (1966), 36 Ill 2d 194 (222 NE2d 321); *People* v. *Castro* (1968), 257 Cal App 2d 643 (65 Cal Rptr 62).

gard to whether the failure to assert the right and
to obtain judicial recognition of it at the trial affect-
ed the result, would require too many retrials to
no useful purpose and is not necessary to preserve
the integrity of our judicial process.

## IV.

### *A Court May Order a New Trial Where a Lawyer Makes a Serious Error*

Even though the right asserted is not one so fully
protected that only the defendant can waive it, and
even though defense counsel's failure to assert such
right does not constitute deprivation of the constitu-
tional right to counsel, if the mistake is of sufficient
importance, the courts, trial and appellate, may, and
in some cases are obliged to, grant the defendant
relief.

Although the constitution does not guarantee an
accused person that his lawyer will not make a big
mistake, it does guarantee a fair trial[18] to everyone,
whether represented by assigned counsel or by re-
tained counsel.[19] Applying this concept, and in the
exercise of their inherent power to control the ad-
ministration of justice, the courts have granted re-
lief where a substantial right of a defendant in a
criminal case was not recognized and protected at
trial even though this failure may properly be at-
tributed to the fault of the defendant's lawyer.

18 *Cf. Powell* v. *Alabama, supra* fn. 9; *Schaber* v. *Maxwell, supra*
fn. 7, pp 667, 673; *Wilson* v. *Rose* (CA 9, 1966), 366 F2d 611, 616;
*State* v. *Dennis, supra,* fn. 10, p 873; *Abraham v. State* (1950) 228
Ind 179 (91 NE2d 358, 360); *Jones* v. *Huff* (1945), 80 App DC 254
(152 F2d 14, 15); *Brubaker* v. *Dickson, supra* fn. 6, p 37.

19 *Wilson* v. *Rose, supra* fn. 18, p 615, and authorities there cited;
*State* v. *Moser* (1967), 78 NM 212 (430 P2d 106); *Abraham* v.
*State, supra* fn. 18, p 361; *People* v. *McCoy* (1967), 80 Ill App 2d
257 (225 NE2d 123, 126). *Cf. United States, ex rel. Maselli,* v.
*Reincke* (D Conn, 1966), 261 F Supp 457.

Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial.[20]

---

[20] See *People* v. *Steeneck* (1929), 247 Mich 583, 586 (admission of evidence seized in the nighttime under a warrant which did not authorize a nighttime search; the Supreme Court stated that, "It cannot be said that it was not prejudicial to the defendant."); *People* v. *Kelsey* (1942), 303 Mich 715, 717–719; *People* v. *Holmes* (1940), 292 Mich 212, 214; *People* v. *Dorrikas* (1958), 354 Mich 303, 326; *People* v. *Jordan* (1967), 7 Mich App 28, 32; *People* v. *Smith* (1932), 260 Mich 486; *People* v. *Guillett* (1955), 342 Mich 1, 7, 8; *People* v. *Bowen* (1968), 10 Mich App 1, 18–20; *People* v. *Murray* (1888), 72 Mich 10, 16; *People* v. *Macard* (1888), 73 Mich 15, 26; see, also, Michigan cases cited in footnote 10.

Cases from other jurisdictions where new trials or other relief has been granted despite the failure of defense counsel to object at trial or otherwise preserve the issue for review include: *People* v. *Ibarra* (1963), 60 Cal 2d 460 (34 Cal Rptr 863, 386 P2d 487), and *People* v. *Johnson, supra* fn. 17 (failure to seek suppression of illegally seized evidence); *People* v. *Odom* (1966), 71 Ill App 2d 480 (218 NE2d 116); *Poe* v. *United States* (DDC, 1964), 233 F Supp 173, *affirmed United States* v. *Poe* (1965), 122 App DC 163 (352 F2d 639); *Schaber* v. *Maxwell, supra* fn. 7; *Wilson* v. *Rose, supra* fn. 18; *United States, ex rel. Maselli,* v. *Reincke, supra* fn. 19; *State* v. *Moser, supra* fn 19; *Commonwealth, ex rel. Washington,* v. *Maroney, supra* fn. 8; *Abraham* v. *State, supra* fn. 18; *Jones* v. *Huff, supra* fn. 18; *Roberts* v. *Dutton, supra* fn. 9; *People* v. *Johnson, supra* fn. 17; *Brubaker* v. *Dickson, supra* fn. 6; *State, ex rel. Kier,* v. *Tahash* (1967), 278 Minn 427 (153 NW2d 222); *Banks* v. *United States* (CA 9, 1957), 249 F2d 672; *Owsley* v. *Peyton* (CA 4, 1966), 368 F2d 1002; *United States, ex rel. Jackson,* v. *Myers* (CA 3, 1967), 374 F2d 707; *Commonwealth, ex rel. Robinson,* v. *Myers* (1967), 427 Pa 104 (233 A2d 220); *State* v. *Wright* (1968), 103 Ariz 52 (436 P2d 601); *Sims* v. *Balkcom* (1964), 220 Ga 7 (136 SE2d 766); *People* v. *Morris* (1954), 3 Ill 2d 437 (121 NE2d 810); *Greer* v. *Beto* (CA 5, 1967), 379 F2d 923; *Lewis* v. *Henderson* (CA 6, 1967), 381 F2d 523; *Bryant* v. *Peyton* (D Va, 1967), 270 F Supp 353; *Smotherman* v. *Beto* (D Tenn, 1967), 276 F Supp 579; *People* v. *Jones* (1968); 30 App Div 2d 1038 (294 NYS2d 829); *People* v. *Welborn* (1968), 257 Cal App 2d 513 (65 Cal Rptr 8); *People* v. *Chatman* (1967), 36 Ill 2d 305 (223 NE2d 110); *People* v. *McDowell* (1968), 69 Cal 2d 737 (73 Cal Rptr 1, 447 P2d 97).

See, also, the following civil cases, *Carras* v. *Bungalow Sandwich Shoppe Co.* (1932), 257 Mich 467; *Clark* v. *Grand T. W. R. Co.* (1962), 367 Mich 396, 400–402; *Steudle* v. *Yellow & Checker Cab & Transfer Co.* (1938), 287 Mich 1, 11–13; *Morrison* v. *Skeels* (1969), 16 Mich App 727, 736; *Sauve* v. *Carling Brewing Company, Inc.* (1965), 374 Mich 487; *Gottesman* v. *Fay-Bea Construction Co.* (1959), 355 Mich 6; *Hicks* v. *B & B Distributors, Inc.* (1958), 353

A claim that an adequate lawyer made a serious
mistake does not raise the constitutional issue of
the right to counsel; it does not involve the concept
of "effective assistance of counsel", it should not be
measured against the sham trial standard which
circumscribes the constitutional right.

The sham trial standard is applicable only where
the defendant asserts deprivation of his constitu-
tional right to counsel and seriously seeks to demon-
strate that he was represented by a bad lawyer.
It is not the correct standard by which to judge a
claim that the defendant is entitled to a new trial
because of a serious mistake made by a good lawyer.

The sham trial standard focuses attention on the
lawyer and the totality of his representation of his
client.[21]   A claim that a constitutionally adequate
lawyer made a serious mistake and that the court
should relieve the client of that error focuses our
attention on the mistake itself and its significance
in bringing about the defendant's conviction.[22]

---

Mich 488, 492; *Sakorraphos* v. *Eastman Kodak Stores, Inc.* (1962),
367 Mich 96.

[21] Cases where, after reviewing the trial record, the court con-
cluded that the lawyer's overall performance was inadequate include
*People* v. *McCoy, supra* fn. 19; *Lunce* v. *Overlade* (CA 7, 1957), 244
F2d 108; *State* v. *Cutcher, supra* fn. 10; *Coles* v. *Peyton, supra*
fn. 9; *People* v. *Jackson* (1968), 96 Ill App 2d 99 (238 NE2d 234).

[22] It is recognized that the opinions of the courts in many of the
cases from other jurisdictions (see cases cited in footnote 20)
where relief was granted because of lawyer error, discuss the matter
in terms of deprivation of effective assistance of counsel, but it is
noteworthy that the analysis in the opinions tends to focus on the
significance of the error rather than on the lawyer.

In a case where it cannot legitimately be contended that the
lawyer who made the mistake is a bad lawyer, which is the typical
case, focusing on the mistake rather than on the lawyer has several
advantages.   It has the advantage of concentrating on the real
issue, *i.e.*, the significance of the mistake in bringing about the
defendant's conviction, rather than on, what for the typical case may
properly be described as, the sham issue of whether the defendant's
trial was a sham.   It has the additional advantages of avoiding
unnecessary inquiry into and criticism of the competency of lawyers
(who are becoming increasingly reluctant to represent indigents and
to expose themselves to such attack) and avoids the absurdity of a
finding that a conscientious, experienced lawyer who has proven his

In deciding whether to grant a new trial because of a serious mistake a court applies concepts akin to those implicit in the harmless error rule, balancing the public interest in avoiding purposeless retrials against the defendant's interest in having all his rights recognized and asserted. Ordinarily a new trial will not be granted unless it appears that if a new trial is ordered during the conduct of which the mistake is not repeated the defendant may very well be acquitted.

In judging the probability of the defendant's acquittal upon a retrial, a court ought not to weigh its personal view of the defendant's guilt or inno-

---

ability to function professionally in countless cases was not a lawyer as to a particular case because he made a serious mistake significant in bringing about his client's conviction. It also avoids the inconstancy of making the determination of a lawyer's competency depend not only on the nature of his mistake but its impact in the factual context of the case.

The reliance in the Federal cases on the "effective assistance of counsel" doctrine in granting habeas corpus relief from a State court conviction attributable to a lawyer's mistake may reflect a belief on the part of counsel for the habeas corpus applicant or the court itself that that doctrine is the source of the court's power to grant relief. The source of that power, however, is the due process clause of the Fourteenth Amendment (see, generally, Allen, The Supreme Court, Federalism and State Systems of Criminal Justice, 8 DePaul L J 213 [1919]). The right to the "effective assistance of counsel" is merely an aspect of due process. See *Powell* v. *Alabama*, *supra* fn. 7. Eschewing the effective assistance of counsel formulation in cases where it cannot legitimately be claimed that the defendant was not represented by an adequate, conscientious lawyer would not foreclose habeas corpus relief in a case where the accused can properly be said to have been denied a fair trial (another aspect of due process) because of a serious mistake by his constitutionally adequate lawyer which was significant in bringing about his conviction. Recognition of the foregoing would permit this body of law to develop disentangled from concepts truly applicable only in the atypical case, which frequently are contorted when it is sought to make them fit in a case where a serious mistake has been made by an adequately trained, conscientious lawyer. See, generally, Meador, The Impact of Federal Habeas Corpus on State Trial Procedures, 52 Va L Rev 286 (1966); Kelman, Federal Habeas Corpus as a Source of New Constitutional Requirements for State Criminal Procedures, 28 Ohio S L J 46 (1967); Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv L Rev 441 (1963).

cence.[23] Even a clearly guilty man is entitled to a fair trial. Although the exclusionary rule was fashioned primarily to discourage unlawful police practices and it is debatable whether the failure to invoke the rule in a particular case will unduly encourage unlawful seizures, it would be unjust to deprive a particular defendant of the benefit of the exclusionary rule because his lawyer failed to object if the introduction of the illegally-seized evidence was a significant factor in bringing about his conviction.[24]

Thus, even though the evidence found in the warrantless search of the automobile in this case adds to the impression which one obtains from a reading of the whole record that the defendant Degraffenreid was clearly guilty of the crime of which he was convicted, we would not decline on that account to recognize his right to have illegally-seized evidence suppressed and to grant him a new trial at which the evidence would not be admissible.

## V.

*When the Issue Has Not Been Preserved by Timely
Objection a New Trial Will Not be Ordered
Where the Court is Convinced it Would
Not Serve a Useful Purpose*

In this case no useful purpose would be served by granting Degraffenreid a new trial. Even were we to order a new trial at which the evidence alleged to have been illegally seized was suppressed, he would again, we are convinced, assuredly be convicted because of the other evidence against him.

---

[23] See *People* v. *Ibarra, supra* fn. 20; *Schaber* v. *Maxwell, supra* fn. 7; *Abraham* v. *State, supra* fn. 18; *cf. People* v. *Bigge* (1939), 288 Mich 417, 421.

[24] See *People* v. *Steeneck, supra* fn. 20; *People* v. *Ibarra, supra* fn. 20; *People* v. *Johnson, supra* fn. 17; *Commonwealth, ex rel. Washington,* v. *Maroney, supra* fn. 8.

When the stolen automobile was recovered it bore license plates CX 8607, which were issued in the name of George Harrell. Harrell owned an automobile with license plate number EX 9774 and had allowed Degraffenreid to use that automobile on one occasion and later discovered that the registration card for plates EX 9774 was missing from the place in the automobile where it was kept. Both the stolen automobile and Harrell's automobile were 1963 Oldsmobiles of the same model, style and color.

The records of the Secretary of State's office show that license plates CX 8607 (on the stolen automobile when it was recovered) were issued when Harrell's license plates EX 9774 were reported lost. The replacement plates were issued the day after the night during which the stolen car was taken from a car dealer's lot. Harrell testified that he did not report the loss of plates EX 9774 or request the issuance of replacement plates and that he did not receive the replacement plates.

It was the registration card for the replacement plates, CX 8607, which was found on Degraffenreid at the police station shortly after he was arrested. Additionally, a traffic policeman testified that two weeks after the stolen car was taken, a traffic violation ticket was issued to Degraffenreid while he was driving a 1963 Oldsmobile of the model, style and color of the stolen car bearing the replacement plates, CX 8607, and that at the time Degraffenreid exhibited to the policeman registration card CX 8607 for the replacement plates thereby representing that Harrell was the owner of the stolen automobile. Brown testified that on several occasions after the automobile was stolen he had ridden in it with the defendant.

We are convinced that even if the incriminating papers taken from the stolen automobile were sup-

pressed and we ordered a new trial, the new jury, like the jury at the first trial, would, on the evidence (other than the allegedly illegally-seized evidence), decide that Degraffenreid was in possession of the stolen motor vehicle knowing or having reason to believe it was stolen and would convict him of the charged offense. Accordingly, we conclude that the defendant's conviction cannot be attributed to his trial counsel's mistake in failing to challenge the admissibility of the papers found by the police in the stolen automobile.

Affirmed.