*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERALD DUANE DAY, JR.,

Defendant-Appellant.

UNPUBLISHED
April 2, 2020

No. 346060
Wayne Circuit Court
LC No. 17-005642-01-FC

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant, Gerald Duane Day, Jr., of first-degree home invasion, MCL 750.110a(2), two counts of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b (multiple variables), second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c (multiple variables), assault with intent to rob while armed, MCL 750.89, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 20 to 40 years for the first-degree home invasion conviction, 50 to 75 years for each CSC-I conviction, 10 to 20 years for the CSC-II and assault with intent to rob while armed convictions, 5 to 20 years for the felon-in-possession conviction, and two years for the felony-firearm conviction. The court ordered the three CSC sentences to be served concurrently with each other, but consecutive to the home invasion, assault, and felon-in-possession sentences, which were to be served concurrently with each other. All sentences were to be served consecutively to the felony-firearm sentence. In addition, the court ordered the sentences in this case to be served consecutively to those imposed in another case, LC No. 17-001694-01-FH.[1] Defendant appeals as of right, challenging the trial court's admission of certain evidence under

---

[1] In LC No. 17-001694-01-FH, the trial court sentenced defendant to 20 to 40 years for first-degree home invasion, 5 to 20 years each for two counts of felonious assault, MCL 750.82, and three months and three days for domestic violence, MCL 750.81(2), which were to be served concurrently. In Docket No. 346061, defendant appeals his convictions and sentences in LC No. 17-001694-01-FH. That case has been submitted to the same case call panel.

MRE 404(b), asserting a double-jeopardy violation, arguing that the trial court abused its discretion by failing to sanction the prosecution's violation of a mutual sequestration order, and challenging the court's imposition of consecutive sentences. Finding no merit in defendant's arguments, we affirm defendant's convictions and sentences.

Defendant's convictions arise from the April 15, 2017 home invasion and sexual assault of a female victim at a home in Grosse Pointe Woods. An intruder broke into the victim's home during the early morning hours, while the victim and her four children were sleeping. The victim awoke to discover the intruder, whom she later identified unequivocally as defendant, inside her house. Defendant demanded the victim's "stuff," but she told him that she did not have anything of value. Defendant then ushered the victim and her four-year-old son downstairs at gunpoint to a living room. Defendant directed the victim and her son to sit on the couch, and then ordered the victim into the kitchen. Once alone in the kitchen with defendant, defendant told the victim to remove her clothes. When she refused, he held the gun to her head and asked, "Do you want to die?" Defendant pushed the victim to the ground and pulled her pants and underwear off and sexually assaulted her. At trial, the prosecution presented evidence of a series of other home invasions in the area approximately a week after the offenses in this case. The instant offenses were committed while defendant was on bond in LC No. 17-001694-01-FH, which involved felony charges relating to crimes committed against defendant's ex-girlfriend in December 2016.

## I. OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion by allowing the prosecutor to introduce other-acts evidence involving home invasions at the homes of Felicia Rich and Bruce Kafarski to show a common scheme or plan. Defendant contends that the evidence was inadmissible under MRE 404(b)(1) and unduly prejudicial under MRE 403. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). At trial, defendant objected to the other-acts evidence on the basis that it was unduly prejudicial under MRE 403, but he did not argue that the evidence was not relevant to a proper purpose under MRE 404(b)(1). Therefore, defendant's appellate objection based on MRE 403 is preserved, but his claim that the evidence was not relevant to a proper purpose under MRE 404(b)(1) is unpreserved. This Court reviews defendant's preserved argument for an abuse of discretion, *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014), and his unpreserved argument for plain error affecting his substantial rights, *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This rule permits the introduction of evidence of a defendant's other acts if relevant for a purpose other than to show the defendant's criminal propensity to commit the charged offense. *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The rule is inclusionary rather than exclusionary. *Id*. at 64. In *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009), this Court explained:

> In deciding whether to admit evidence of other bad acts, a trial court must decide: first, whether the evidence is being offered for a proper purpose, not to show the defendant's propensity to act in conformance with a given character trait; second, whether the evidence is relevant to an issue of fact of consequence at trial; third, [under MRE 403] whether its probative value is substantially outweighed by the danger of unfair prejudice in light of the availability of other means of proof; and fourth, whether a cautionary instruction is appropriate.

In *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994), our Supreme Court explained unfair prejudice under MRE 403 as follows:

> Obviously, evidence is offered by an advocate for the always clear, if seldom stated, purpose of "prejudicing" the adverse party. Recognizing this, the Supreme Court in adopting MRE 403 identified only unfair prejudice as a factor to be weighed against probative value. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [Citation and quotations omitted.]

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin* (*After Remand*), 463 Mich 43, 63; 614 NW2d 888 (2000). There must be such a "*concurrence of common features*" that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. *Id*. at 63-64, quoting 2 Wigmore Evidence (Chadbourn rev), § 304, p 249 (emphasis in Wigmore). The evidence of uncharged acts "needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002). "[D]istinctive and unusual features are not required to establish the existence of a common design or plan." *Id*. at 252-253.

In the present case, the prosecution sought to enter evidence of three other home invasions. The record demonstrates that these other acts shared a "concurrence of common features" with the charged acts such that they could logically be seen as part of a common plan, scheme, or system. The common plan evidenced by the charged acts and the other acts was defendant breaking into homes to sexually assault female victims inside. In the case at bar, defendant completed that plan. Detective Lieutenant John Alcorn of the Grosse Pointe City Police testified about an April 22 home invasion and attempted criminal sexual assault of a young girl at a home on Washington Road that bore similarities to the home invasion and assault at issue here. Although no sexual assault was completed in the incidents to which Rich and Kafarski testified, these incidents also shared common features with the instant case and the April 22 home invasion and attempted sexual assault.

-3-

All of the incidents occurred within an eight-day period and at locations within a short distance of each other and of defendant's home. In each case, women were sleeping inside their home when the intrusion occurred. Each home invasion occurred during the early morning hours when it was still dark. The intruder in each case wore dark clothing and both the victim in the present case and Rich saw the intruder wearing gloves. According to the victim, defendant used a gun with night sights, and a gun matching that description was recovered near Rich's and Kafarski's homes on the morning of those offenses. Moreover, defendant was arrested in the same area hours after the Rich and Kafarski home invasions. Although there are some dissimilarities in the level of completion between the charged acts and the home invasions at Rich's and Kafarski's homes, a high degree of similarity is not required. See *Sabin*, 463 Mich at 63. Moreover, neither distinctive nor unusual features are required to be present in both the charged and the uncharged acts. *Hine*, 467 Mich at 252-253. Given the record before us, we conclude that there were sufficient similarities between this offense and the uncharged acts to show a common plan, scheme, or system, which is a proper purpose under MRE 404(b)(1).

Defendant also argues that the other acts involving Rich and Kafarski were unfairly prejudicial. Although the evidence of these home invasions was inherently prejudicial, defendant has not pointed to any unfair prejudice because of the evidence's tendency to elicit bias, sympathy, anger, shock, or other considerations extraneous to the merits of the charged offenses that would have substantially outweighed the probative value of the evidence. *Pickens*, 446 Mich at 337. Thus, the trial court did not abuse its discretion by admitting the evidence under MRE 404(b)(1).

## II. DOUBLE JEOPARDY

Defendant also argues that the trial court erred by denying his motion to dismiss on double-jeopardy grounds after the trial court declared a mistrial at his first trial. We disagree. "A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015).

Defendant's first trial began on Monday, March 12, 2018. The jury was empaneled and the attorneys gave their opening statements. The following day, the court adjourned the trial without providing a reason to the jury on the record. On March 14, 2018, the prosecutor explained outside the presence of the jury that defendant was absent the day before and was absent again that day. She argued that defendant's absence was the result of "his own actions." She explained that eight witnesses were prepared to testify the day before and were again ready to testify and urged the court to continue with the trial in defendant's absence.

Defense counsel objected to going forward without defendant, stating that defendant's absence rendered him unavailable to assist in his defense. Defense counsel explained that, late on Monday or early Tuesday morning, defendant was discovered unconscious or unresponsive. She further explained that defendant was in the hospital and, although she had sent defendant's mother to the hospital to obtain information, the hospital would only confirm that he was present. Counsel also noted that a police officer had given a media interview in which he stated that defendant had intentionally overdosed on sleeping pills to commit suicide. Defense counsel characterized the officer's statement as "caus[ing] a manifest necessity as to why this Court should actually declare a mistrial."

The trial court ruled that defendant's hospitalization and the effect further delay would have on the availability of jurors constituted manifest necessity to declare a mistrial. Defendant was released from the hospital a few days later and appeared in court on March 19, 2018, for a final conference. At that point, defendant moved to dismiss the case on double-jeopardy grounds, arguing that double jeopardy barred a second trial because of the police officer's comments in the media interview. The trial court denied the motion, noting that the police officer's interview was not the basis for the mistrial.

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." *Yeager v United States*, 557 US 110, 117; 129 S Ct 2360; 174 L Ed 2d 78 (2009). The Double Jeopardy Clause protects against successive prosecutions for the same offense and against multiple punishments for the same offense. *Brown v Ohio*, 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977). Regarding successive prosecutions, the United States Supreme Court has explained:

> "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." [*Yeager*, 557 US at 117-118, quoting *Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199(1957).]

When a defendant exercises the right to trial by jury, jeopardy generally attaches at the time the jury is selected and sworn. *People v Dawson*, 431 Mich 234, 251; 427 NW2d 886 (1988). If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of a manifest necessity. *Id*. at 251-253.

In *People v Benton*, 402 Mich 47, 54-55; 260 NW2d 77 (1977), our Supreme Court explained:

> It is established that if the defendant himself moves for or consents to the declaration of a mistrial he will ordinarily be deemed to have waived any double jeopardy claim. In determining whether the defendant has consented to a mistrial, the United States Supreme Court declared, in a case where the defendant's mistrial motion was assertedly occasioned by judicial error, that "(t)he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed." *United States v Dinitz*, 424 US 600, 607-609; 96 S Ct 1075; 47 L Ed 2d 267 (1976). This Court, on the authority of *Dinitz*, has declared that the defendant must "do something positively in order to indicate he or she is exercising that primary control." Defendant's silence or failure to object to a declaration of mistrial does not constitute the requisite affirmative showing on the record.

In *People v Degraffenreid*, 19 Mich App 702; 173 NW2d 317 (1969), this Court stated that the double-jeopardy bar is not within the class of rights that can only be waived by a defendant and

-5-

not defense counsel. The Court contrasted this waiver to a decision to waive a jury trial or waive counsel. *Id.*

We conclude that defendant's consent to the mistrial precluded any bar to retrial on double-jeopardy grounds. Defense counsel's assertions that she could not continue without defendant's assistance and the trial court's subsequent declaration of a mistrial on the basis of defendant's absence indicate positive indications that the defense retained control over the course to be followed. Moreover, following *Degraffenreid*, defense counsel's consent can be imputed to defendant. See *People v Brinson*, 68 Mich App 27, 31; 241 NW2d 748 (1976). Through his consent, defendant waived any double-jeopardy challenge to his prosecution. See also *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (a waiver entails an intentional relinquishment of a known right, and a party who waives rights may not seek appellate review for a claimed deprivation of those rights, as the waiver extinguishes any error).

Defendant further argues that, notwithstanding his consent to a mistrial at his first trial, double jeopardy should have barred his retrial because of the police officer's improper comments in a media interview during his first trial. We disagree.

"[E]ven where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." *Oregon v Kennedy*, 456 US 667, 673; 102 S Ct 2083; 72 L Ed 2d 416 (1982). The Supreme Court explained in *Kennedy* that "there would be great difficulty in applying such a rule where the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.' " *Id.* (citation omitted).

> Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evidence by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court. Most such objections are undoubtedly curable by simply refusing to allow the proffered evidence to be admitted, or in the case of a particular line of inquiry taken by counsel with a witness, by an admonition to desist from a particular line of inquiry. [*Id.* at 674-675.]

The Supreme Court stated that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676.

In *People v Tyson*, 423 Mich 357; 377 NW2d 738 (1985), the prosecutor was questioning the officer in charge about the defendant's demeanor "to discredit [the] defendant's insanity defense by eliciting testimony that he was 'putting on sort of an act.' " *Id.* at 360-361. When the prosecutor asked the officer whether the defendant's demeanor changed after the arrest, the officer responded that the defendant " 'displayed a feeling of remorse.' " *Id.* Our Supreme Court stated that the officer's "answer exceeded the bounds of the question and could not reasonably have been anticipated by the prosecutor." *Id.* at 372. Moreover, after the defendant moved for a mistrial, "the prosecutor denied that the motion had been intentionally provoked, and the trial judge agreed that there had been no intentional misconduct on the prosecutor's part." *Id.* Therefore, the Court

found that the facts did not demonstrate "deliberate misconduct" on behalf of the prosecutor and retrial was not barred by double jeopardy. *Id.* at 373.

There is no evidence in the present case that the prosecutor committed misconduct. Similar to *Tyson*, the record demonstrates that the police officer's statements in the media interview were unanticipated by the prosecutor, who had no knowledge of the interview. Indeed, the officer was not a member of the agency in charge of the prosecution, and that agency had not known about the interview. Furthermore, there is no indication that the prosecutor had any interest in a mistrial. Indeed, the prosecutor urged the court to continue with the trial in defendant's absence. Moreover, the officer's media interview was not the basis for the mistrial at defendant's first trial. Rather, the trial court declared a mistrial because defendant was hospitalized and unavailable to assist in his defense, and it was unknown when he might be available. Under these circumstances, any misconduct by the officer in the media interview was not a basis for barring defendant's retrial. Accordingly, the trial court did not err by denying defendant's motion to dismiss on double-jeopardy grounds.

## III. VIOLATION OF A WITNESS SEQUESTRATION ORDER

Defendant argues that the trial court abused its discretion by refusing to impose sanctions for witness Rich's violation of a sequestration order. We again disagree. This Court reviews a decision regarding the remedy for violation of a sequestration order for an abuse of discretion. *People v Meconi*, 277 Mich App 651, 654-655; 746 NW2d 881(2008). "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, . . . for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26. Under this statute, an error is presumed to be harmless, and defendant bears the burden of proving otherwise. *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999). This Court will reverse only if, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id*. at 495-496, quoting MCL 769.26.

At the beginning of defendant's jury trial, the trial court granted the prosecution's motion for a mutual sequestration order, with an exception for the officer-in-charge. See MRE 615. In *Meconi*, 277 Mich App at 652-653, this Court explained:

The purposes of sequestering a witness are to "prevent him from 'coloring' his testimony to conform with the testimony of another," *People v Stanley*, 71 Mich App 56, 61; 246 NW2d 418 (1976), and to aid "in detecting testimony that is less than candid." *Geders v United States*, 425 US 80, 87; 96 S Ct 1330; 47 L Ed 2d 592 (1976). Additionally, the United States Supreme Court has recognized three sanctions that are available to a trial court to remedy a violation of a sequestration order: "(1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." *United States v Hobbs*, 31 F3d 918, 921 (CA 9, 1994), citing *Holder v United States*, 150 US 91, 92; 14 S Ct 10; 37 L Ed 1010 (1893). Although usually stated in the context of a defense witness's exclusion in a criminal case, courts have routinely held that exclusion of a witness's testimony is an extreme remedy that

should be sparingly used. See, e.g., *United States v Smith*, 441 F3d 254, 263 (CA 4, 2006); *Hobbs*, [31 F3d at 921].

In the case at bar, it is undisputed that witness Rich was present in the courtroom, in violation of a sequestration order, during the testimony of some of the witnesses. However, the trial court found that the failure to sequester witness Rich was inadvertent. The prosecutor did not know Rich and could not recognize her. Although the officer-in-charge had been watching the door for witnesses, he did not see that Rich was already in the courtroom. Moreover, Rich offered testimony about an uncharged offense that was not addressed in the testimony of the earlier witnesses. Thus, there is no indication that her presence would have enabled her to color her testimony to conform to any testimony she had heard. Notably, when the trial court asked defense counsel what possible prejudice would result if the court allowed Rich to testify, defense counsel responded, "I, I can't come up with any at this point, your Honor."

On appeal, defendant acknowledges that the violation was innocent and that Rich's testimony was "inconsequential," but advocates nevertheless for its exclusion. We have already indicated that where violation of a sequestration order is an "innocent mistake," the "severe sanction" of excluding the witness's testimony goes too far. *Meconi*, 277 Mich App at 655. Under these circumstances, the trial court did not abuse its discretion by declining to impose any sanction for the inadvertent violation.

## IV. CONSECUTIVE SENTENCING

Defendant argues that the trial court erred by ordering his sentences in this case to be served consecutively to his sentences for his convictions in LC No. 17-001694-01-FH. Whether a statute authorizes consecutive sentencing is a question of law, which is reviewed de novo. *People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012). When consecutive sentencing is authorized, but not mandated, the decision to impose consecutive sentences is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016); *Ryan*, 295 Mich App at 406. "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside th[e] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

In Michigan, "concurrent sentencing is the norm" and a "consecutive sentence may be imposed only if specifically authorized by statute." *Ryan*, 295 Mich App at 401. Defendant notes that the home invasion statute and the CSC-I statute both authorize the imposition of consecutive sentences for sentences imposed for either of those offenses and for other criminal offenses "arising from the same transactions." MCL 750.110a(8); MCL 750.520b(3). Defendant argues that these statutes did not authorize the trial court to order his sentences in this case to be served consecutively to his sentences in LC No. 17-001694-01-FH because the offenses in the two cases were not part of the same transaction. However, the trial court did not order consecutive sentencing with respect to the sentences in this case and LC No. 17-001694-01-FH on the basis of the same-transaction requirements in the home invasion or CSC-I statutes. Rather, the court relied on MCL 768.7b, which provides, in relevant part:

(2) Beginning January 1, 1992, if a person who has been charged with a felony, pending the disposition of the charge, commits a subsequent offense that is a felony, upon conviction of the subsequent offense or acceptance of a plea of

guilty, guilty but mentally ill, or nolo contendere to the subsequent offense, the following shall apply:

(a) Unless the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense may run consecutively.

(b) If the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense shall run consecutively.

There is no requirement that the offenses in the subsequent case be related to or arise from the same transaction as the prior felony offenses for purposes of consecutive sentencing under MCL 768.7b.

In *People v Chambers*, 430 Mich 217, 226; 421 NW2d 903 (1988), our Supreme Court explained that MCL 768.7b "extended discretionary consecutive sentencing authority in the instance where a defendant committed a felony while free on bond pending final disposition of a prior felony charge." Pursuant to MCL 768.7b, a charge remains "pending" until the defendant is sentenced on the conviction arising out of the first offense or until the original charge with respect to the first offense is dismissed. *People v Smith*, 423 Mich 427, 452; 378 NW2d 384 (1985). The purpose of MCL 768.7b "is to deter those charged with one felony from committing another prior to final disposition of the first." *Smith*, 423 Mich at 450.

It is undisputed that defendant committed the instant offenses while on bond in a felony case that was still pending, LC No. 17-001694-01-FH, while the charges in that case were still pending. Therefore, upon his conviction of the instant felonies, it was within the trial court's discretion to order defendant to serve his sentences in this case consecutively to the sentences imposed in LC No. 17-001694-01-FH.

Nevertheless, defendant contends that the trial court erred by failing to state particularized reasons for ordering consecutive sentencing. See *Norfleet*, 317 Mich App at 665 (holding that where discretionary consecutive sentencing is authorized, trial courts must "articulate their rationale for the imposition of each consecutive sentence so as to allow appellate review"). "[R]equiring trial courts to justify each consecutive sentence imposed will help ensure that the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *Id.*

Contrary to defendant's argument on appeal, the trial court provided specific reasons for its decision to order the sentences in this case to be served consecutively to the sentences in LC No. 17-001694-01-FH. Specifically, the court found that defendant "did not comply with the terms of his bond . . . [and he] made an unequivocal declaration, based on his later behavior . . . that he decided to escalate his criminal behavior." The court described defendant's subsequent acts as "exponentially greater, and more devastating," and found that defendant "breached the trust of the Court." Thus, the trial court sufficiently articulated its rationale for ordering the sentences in the two cases to be served consecutively, and defendant has not established that the trial court's decision fell outside the range of principled outcomes.

In sum, the trial court complied with its obligation to justify each consecutive sentence imposed, and its decisions to impose consecutive sentences are not outside the range of principled outcomes.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola