PEOPLE v LEWIS

1. CRIMINAL LAW—ATTORNEY AND CLIENT—COMPETENCY OF DEFENSE COUNSEL—MOTIONS—ALLEGATIONS—SUPPORT IN RECORD—CONSTITUTIONAL LAW.

A criminal defendant who seeks to challenge the competency of his trial attorney must first file a motion for a new trial and evidentiary hearing where the assertion of incompetence depends on facts not of record, but the failure of a defendant to renew such a motion, after a temporary denial of his motion because of the unavailability of trial transcripts, does not bar review of the defendant's allegation where there is substantial support for such a contention in the record.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—EFFECTIVE ASSISTANCE OF COUNSEL—FAIR TRIAL.

A criminal defendant's constitutional right to counsel guarantees only that his trial will not be a sham, farce or mockery of justice and that he will receive some minimal assistance of counsel; however, the important inquiry upon review of a claim of ineffective assistance of counsel is whether, in the individual case, the defendant received a fair trial (US Const, Am VI).

3. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—EFFECTIVE ASSISTANCE OF COUNSEL—MISTAKE OF COUNSEL—FAIR TRIAL—NEW TRIAL—ADMINISTRATION OF JUSTICE.

A new trial may be granted a criminal defendant because of a serious mistake made by defense counsel where it appears that if a new trial is ordered, during the conduct of which the mistake is not repeated, the defendant may be acquitted; this right to retrial is not based upon the Sixth Amendment right to counsel, but on the constitutional right to a fair trial and on the power of the appellate courts to control the administration of justice (US Const, Am VI).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–6] 21 Am Jur 2d, Criminal Law § 315.
  58 Am Jur 2d, New Trial § 56 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 309 *et seq.*

4. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO PREPARE DEFENSE—DEPRIVATION OF DEFENSE—SHOWING OF IN-COMPETENCE—CONSTITUTIONAL LAW.

A criminal defendant who is able to show that defense counsel, through failure to investigate and prepare a substantial defense, has deprived the defendant of that defense, has thereby made a prima facie showing of incompetence on the part of defense counsel.

5. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO ASSERT DEFENSE—FAILURE TO INFORM COUNSEL—CONSTITU-TIONAL LAW.

A defendant may not claim that his attorney's failure to assert a defense is evidence of the attorney's incompetence where the defendant, given adequate opportunity, failed to inform his attorney of the possible defense.

6. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO ASSERT DEFENSE—ALIBI—REMAND—EVIDENTIARY HEARING—NEW TRIAL.

A defendant whose trial attorney failed to properly assert a claimed defense of alibi is entitled to a remand for an eviden-tiary hearing at which it shall be determined whether witnesses who were not produced at the trial are willing to corroborate the defendant's version of his whereabouts at the time the crime was allegedly committed, thus establishing a substantial defense; if so, the defendant is entitled to a new trial.

Appeal from Genesee, Donald R. Freeman, J. Submitted June 5, 1975, at Lansing. (Docket No. 20103.) Decided September 10, 1975. Leave to appeal denied, 395 Mich 810.

Leon B. Lewis was convicted of delivery of heroin. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*Brownell, Andrews & Philpott* (by *Randolph P. Piper),* for defendant on appeal.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

J. H. GILLIS, J. On November 29, 1973 a jury found defendant guilty of delivering a controlled substance (heroin), contrary to MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). He received a 13-to-20 year jail sentence, and appeals as of right.

The sole issue we deal with on appeal is whether defendant received effective assistance from his trial counsel. Normally, when defendant seeks to challenge the competency of his trial attorney, he must first file a motion for a new trial and an evidentiary hearing. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). In the instant case, defendant's trial counsel filed a motion for a new trial, but it is unclear upon what ground this motion rested. The trial judge temporarily denied the motion because no trial transcripts were available at that time. The motion was never renewed. As stated earlier, this failure to renew the motion would usually preclude review. However, in *Ginther, supra,* the Court recognized an exception to this rule by holding that a motion for a new trial is required only when defendant's assertion of incompetence "depends on facts not of record".[1] Because, in the instant case, there is substantial support in the record for defendant's contention, we feel that his failure to renew his motion does not bar our review.

Turning now to the merits of this case, it is first necessary to give a detailed statement of its under-

---

[1] *People v Ginther,* 390 Mich 436, 442–443; 212 NW2d 922, 925 (1973).

lying facts in order to put defendant's allegation in its proper perspective.

On April 18, 1973, the prosecution filed an information charging defendant with the unlawful sale of heroin. According to the prosecutor's theory of the case, defendant sold $10 worth of heroin to one Robert Roach, a police informer, on February 27, 1973. Prior to the sale, Roach had been searched at his own home by the police, he had been wired with a transmitting device,[2] and he had been given $25. Roach then drove in his own car to defendant's house, followed by the police in a separate unmarked auto. Roach entered defendant's house and allegedly purchased $10 worth of heroin. The transmitting device malfunctioned; the police were unable to see or hear anything that occurred in the Lewis' home. After the alleged purchase, Roach drove back to his house in his own car and then gave the police $15 and some heroin.

By April 30, 1973, defendant had been arraigned, a preliminary examination had been held,[3] and assigned counsel had filed an appearance. On May 9, 1973, defendant was granted bail and trial was set for August 1. On July 12, assigned counsel filed a motion for the "production of exculpatory evidence", said motion being unsupported by a brief.

On August 2, defendant fled before the second day of his trial could begin. A mistrial was then declared. Soon afterwards, defendant was rearrested and trial was reset for November 27. On

---

[2] Robert Roach, the only eyewitness to the alleged sale, is an admitted transvestite who has suffered three gross indecency convictions, as well as a breaking and entering conviction and a carrying a concealed weapon conviction. On the night in question, Roach was dressed as a woman and wore the transmitting device in his brassiere. He went under the alias of Mandy Ross.

[3] Robert Roach was the only person to testify at the preliminary examination.

November 13, defense counsel made a motion for a polygraph test of defendant at state expense "because my client informs me he is completely innocent". The motion was denied, and on November 27, defendant's trial began anew.

On the morning of November 28, defense counsel made a motion for a mistrial on the basis that he had forgotten to file a notice of alibi.[4] Defense counsel admitted that defendant had informed him of the alibi in April. He also admitted that he and defendant's wife had discussed the alibi in "May or June". The prosecutor "vaguely" remembered discussing the alibi with defense counsel prior to the aborted August 1 trial. Defense counsel stated that he only remembered defendant telling him about the alibi back in April, and claimed that defendant did not give him the names of the potential alibi witnesses. He further stated that although he had spoken many times with defendant since April, defendant did not give him the names of the alibi witnesses until that morning, November 28. Counsel did not claim to have asked for the names. The trial judge denied the motion for a mistrial, but waived the notice requirement and allowed defense counsel the remainder of the day to produce the alibi witnesses.

At this juncture, it is appropriate to detail the particulars of defendant's alibi defense. Essentially, defendant contends that on the date in question, he, his cousin Michael Holbrook, and his brother-in-law Allen Jones left Flint at approximately 10:30 a.m. to visit a cousin, Clyde Anderson, in Saginaw. The four men remained together in Saginaw until 3:30 p.m. At that time defendant, Holbrook, and Jones left Saginaw and returned to

---

[4] MCLA 768.20; MSA 28.1043 requires defendant to file a notice, prior to trial, listing all alibi witnesses he intends to call.

`Flint. Defendant and Holbrook then dropped Jones off and proceeded to Holbrook's house, where they remained until 9 p.m. Defendant's wife, Modie Lewis, concurred in this version of the story. She also stated that Roach came to their house at 6:30 p.m., asked for heroin, and was told that they had none. According to Ms. Lewis, Roach left soon afterwards. This alibi, if effectively set forth and verified by all the witnesses at trial, would have presented a direct conflict with the prosecution's theory that defendant sold heroin to Robert Roach at 6:30 p.m. the same day.

On the morning of November 29, defendant's trial began again. Defense counsel called Modie Lewis to the stand. She testified that she had attempted to get in touch with Michael Holbrook the previous day, and that a friend of his told her that Michael was now in the army and stationed in California. She further testified that defendant's brother-in-law, Allen Jones, had died a few days after the alleged sale occurred. A death certificate was introduced into evidence to verify this. No mention was made of the Saginaw cousin, Clyde Anderson. This testimony is the sole evidence in the record relating to any effort to contact the alibi witnesses.

After Modie Lewis testified, defense counsel put James Siebel, a General Motors' employee, on the stand. Siebel testified that he was in charge of the employees' work records at a certain General Motors' plant, and that Michael Holbrook was an employee at that plant. In response to a question from defense counsel, Siebel stated that Holbrook had worked from 6:30 a.m. to 3 p.m. on February 27, 1973, the day he supposedly spent in defendant's company.[5]

---

[5] While this Court can merely guess, it appears that defense counsel

It is fairly obvious that Siebel's testimony severely damaged defendant's attempt at an alibi defense. While there are feasible explanations to negate the damaging effect of this testimony,[6] on its face it destroyed defendant's credibility. The only explanation that this Court can devise for defense counsel's introduction of this testimony is that defense counsel did not know what this witness would say on the stand. Under the strange circumstances of this case, that explanation seems consistent.

The issue we must decide then is whether, on the facts of this case, defendant was denied the effective assistance of counsel.

The question of what constitutes. "effective assistance of counsel" is a difficult one; the law in this area is in constant evolution. Different jurisdictions employ different standards.[7] In Michigan, a standard was first put forward in *People v Degraffenreid*, 19 Mich App 702; 173 NW2d 317 (1969). In *Degraffenreid, supra,* the Court held that the Sixth Amendment right to counsel guaranteed defendant only that his trial would not be a "sham, farce or mockery of justice," and that he would receive some sort of minimal assistance of counsel.[8] *Degraffenreid, supra,* did recognize that

was attempting to show that if Holbrook was not at work on February 27, this fact would at least inferentially support defendant's claim that Holbrook was with him.

[6] It is possible, for example, that either General Motors' records were inaccurate or that Michael Holbrook was defrauding General Motors by having another person "punch" him in.

[7] For a comprehensive discussion of the historical and constitutional underpinnings of various standards used to evaluate a "competency of counsel" claim, *see People v Strodder*, 394 Mich 193, 210–218; 229 NW2d 318 (1975, WILLIAMS, J. concurring), and Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief,* 59 NWU L Rev 289 (1964).

[8] In *People v Degraffenreid*, 19 Mich App 702, 710; 173 NW2d 317, 321 (1969), the Court relied on a quote from *Williams v Beto,* 354 F2d

oftentimes defense counsel will make a "serious mistake" in a specific case, even though that attorney has otherwise adequately represented defendant. In certain cases where such a mistake has occurred, defendant will be entitled to retrial.[9] This right to retrial is not based on the Sixth Amendment right to counsel, but rather on the constitutional right to a fair trial, and on appellate courts' power to control the administration of justice.[10]

In *Beasley v United States,* 491 F2d 687 (CA 6, 1974), the Sixth Circuit rejected the "farce and mockery of justice" test. It joined itself with a growing number of jurisdictions in holding that the Sixth Amendment requires " * * * counsel reasonably likely to render and rendering reasonably effective assistance". *Beasley, supra,* at 696. In doing so, the court recognized that phrases such as "farce or mockery of justice", and for that matter "reasonably effective assistance" mean nothing in the abstract. What was important was to look at each case individually, and to decide whether defendant had received a fair trial.

The *Beasley* court did indicate that defendant was denied effective assistance if defense counsel

---

698, 704 (CA 5, 1963) in setting forth the applicable standard: "It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation."

[9] "In deciding whether to grant a new trial because of a serious mistake a court applies concepts akin to those implicit in the harmless error rule, balancing the public interest in avoiding purposeless retrials against the defendant's interest in having all his rights recognized and asserted. Ordinarily a new trial will not be granted unless it appears that if a new trial is ordered during the conduct of which the mistake is not repeated the defendant may very well be acquitted." *Degraffenreid, supra,* at 718; 173 NW2d 326.

[10] *Id* at 715; 173 NW2d 324.

"deprive[d] a criminal defendant of a substantial defense by his own ineffectiveness or incompetence".[11] *Beasley, supra,* found an obligation on defense counsel's part to "investigate all apparently substantial defenses available to the defendant and * * * assert them in a proper and timely manner".[12]

The requirement of *Beasley, supra,* that defense counsel investigate potential defenses and assert them is a duty that numerous jurisdictions recognize.[13] The rationale of these cases is irrefutable. The importance of defense counsel's pretrial investigation and preparation cannot be overemphasized. The court in *Moore v United States,* 432 F2d 730 (CA 3, 1970), effectively enunciated the policy behind the requirements of adequate preparation and investigation:

"Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. *(Moore, supra,* at 735.)

"The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance. Such omissions, of course, will rarely be visible on the surface of the trial". *(Id* at 739.)

We now hold that when defendant is able to

---

[11] *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974).

[12] *Id* at 696 (Citations omitted.)

[13] *See, McQueen v Swenson,* 498 F2d 207 (CA 8, 1974), *United States v DeCoster,* 487 F2d 1197 (US App DC, 1973), *Johns v Perini,* 462 F2d 1308 (CA 6, 1972), *Coles v Peyton,* 389 F2d 224 (CA 4, 1968), *Moore v United States,* 432 F2d 730 (CA 3, 1970), *Roberts v Dutton,* 368 F2d 465 (CA 5, 1966), *People v Ibarra,* 60 Cal 2d 460; 34 Cal Rptr 863; 386 P2d 487 (1963), *Thomas v State,* 516 SW2d 761 (Mo App, 1974), *People v White,* 182 Colo 417; 514 P2d 69 (1973), *Risher v State,* 523 P2d 421 (Alaska, 1974).

show this Court that defense counsel, through failure to investigate and prepare a substantial defense, has deprived defendant of that substantial defense, defendant shall have made a prima facie showing of incompetence.

Returning to the record in the instant case, we find, "as is typical in cases raising a claim of ineffectiveness, [it] poses more questions about defense counsel's competency than it answers." *United States v DeCoster,* 487 F2d 1197, 1201 (US App DC, 1973). Since we remand for an evidentiary hearing on this matter, we find it necessary to discuss the principles we think ought to control the "questions posed".

As stated before, defendant is entitled to have defense counsel investigate, prepare, and assert all substantial defenses. The trial judge, at the evidentiary hearing, must decide whether defendant sought to avail himself of this right, and if he did so, whether the defense was indeed "substantial".

The record here clearly reveals that defense counsel did not adequately investigate, prepare, and assert the alibi defense. If anything, he destroyed it. The important question, unanswered by the record, is whether defendant made a good faith effort to convey to his counsel the fact that he wanted the alibi asserted. Defendant is not free to sit back and not inform his attorney of possible defenses, and then claim that counsel's failure to assert those defenses is evidence of incompetence. *People v Luster,* 44 Mich App 38; 205 NW2d 78 (1972), *State v Robinson,* 302 So 2d 270 (La, 1974). In deciding this question, the trial judge should examine whether defense counsel made himself available to defendant,[14] what effort defendant

---

[14] We note that defense counsel's "petition for fees" contained no reference to any conference held with defendant. While this fact,

made to communicate with defense counsel, and whether defendant was reasonably under the impression that defense counsel was going to assert the alibi.

If the trial judge finds that defendant did indeed make a good faith attempt to communicate the alibi defense to defense counsel, the trial judge need only then decide whether the defense was "substantial". By "substantial", we mean whether either Michael Holbrook or Clyde Anderson is willing to verify defendant's version. If either of the two witnesses' stories accords with defendant's, defendant is entitled to a new trial. The trial judge may not make any judgment as to whether he thinks the witnesses are in fact telling the truth, for that is a function of the jury upon retrial. *McQueen v Swenson,* 498 F2d 207 (CA 8, 1974). On the other hand, if both witnesses refute defendant's contention that he was with them on the day in question, no retrial is necessary, because defendant would not have been deprived of a "substantial" defense.

Defendant's other allegation of error is correct, but harmless.[15]

Remanded for proceedings not inconsistent with this opinion.

---

taken alone, is not sufficient to raise an inference of ineffective assistance, we think it has probative value. *People v Vaughn,* 31 Mich App 599, 603; 188 NW2d 53, 55 (1971).

[15] Should retrial be necessary, special heed should be paid to the mandates of *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193, 199 (1973):

"We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witnesses which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial."