## PEOPLE v BYNUM

1. Criminal Law—Constitutional Law—Right to Counsel—Serious Mistakes—Appeal and Error.

   A new trial will not be granted in a criminal case because of a serious mistake by a good lawyer unless it appears that a defendant may very well be acquitted if a new trial is ordered and the mistake is not repeated.

2. Criminal Law—Alibi Defense—Mistake of Counsel—Appeal and Error—Evidentiary Hearing—Witnesses—Alibi Witnesses—New Trial.

   An evidentiary hearing to evaluate the proposed testimony of a defendant's alleged alibi witnesses is required where the defendant was deprived of his only defense of alibi by a serious mistake of informed counsel and where the Court of Appeals has no indication of the potential testimony of the proposed witnesses; defendant is entitled to a new trial if the trial judge finds that a witness is willing to verify defendant's version of events.

Appeal from Recorder's Court of Detroit, Donald S. Leonard, J. Submitted June 2, 1975, at Detroit. (Docket No. 20239.) Decided September 10, 1975. Leave to appeal applied for.

Terry L. Bynum was convicted of attempted kidnapping. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and

References for Points in Headnotes

[1] 58 Am Jur 2d, New Trial §§ 56 *et seq.,* 161.
[2] 58 Am Jur 2d, New Trial § 178.

*Robert M. Morgan,* Assistant Prosecuting Attorney, for the people.

*Durant, Talbot, Grant & McQuarrie,* for defendant on appeal.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

R. B. BURNS, J. Defendant appeals his conviction by a Detroit Recorder's Court jury of the lesser included offense of attempted kidnapping. He alleges that he was denied a fair trial.

Defendant and two codefendants were charged originally with kidnapping and armed robbery of one Raymond Noonan. Noonan was driving a semi-tractor trailer containing a shipment of appliances when three men in a blue automobile accosted him at the point of a sawed-off shotgun. The gunman, whom he subsequently identified as codefendant Slate, ordered him to dismount the truck and get into the trunk of the car, and as he obeyed he had an opportunity to observe the other two men (identified as defendant Bynum and codefendant Parker) standing by the rear of the car.

After the trunk was closed, Noonan heard the truck pull off, followed by the automobile. He managed to disassemble the trunk lock and leap out of the vehicle onto the roadbed of the I-75 Freeway. He was picked up by a passing motorist and driven to the police station. He testified at trial that he selected defendant from a lineup.

On December 26, 1973, some nine days after trial commenced, defendant's counsel inquired of the court as to whether his request to call alibi witnesses had been denied. The court noted counsel's failure to comply with the statutory notice provision for alibi witnesses, MCLA 768.21; MSA

28.1044, and ruled to deny the witnesses. Further review of the record reveals the court's December 21 ruling that codefendant Slate would be allowed to call alibi witnesses despite improper notice because of an effort to comply with the statute. Defendant's counsel then announced a similar intention to use an alibi defense, asserting that he had verbally so notified the prosecutor on December 17. The court's query as to his continuing failure to file notice was met by an assertion of "misunderstanding probably on my part" by counsel. The court ruled that the requirements of the alibi statute had not been met. Counsel stated that he would supply the prosecutor with the required information, and the court suggested that he attempt to make arrangements agreeable with the prosecutor.

Counsel did nothing until December 24, Christmas Eve, when he filed a motion on a day when court was not in session and when any prosecutorial investigation would have been difficult at best. In its December 26 ruling the court noticed the difference between counsel's activity and that of counsel for codefendant Slate; specifically, that the latter had filed a notice earlier (December 17), and that he had presented his witnesses for interviewing and investigation by the prosecution.

Defendant rested without presentation of a defense. On appeal, he does not aver that the court abused its discretion, but contends that counsel's failure to comply with the notice of alibi statute was ineffective assistance of counsel sufficient to deny him a fair trial.

The standard adopted by this Court relative to ineffective assistance of counsel is expressed in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). The Court adopted the language

of *Williams v Beto,* 354 F2d 698, 704 (CA 5, 1965), to the effect that defendant must show that the "trial was a farce, or a mockery of justice" or the representation of counsel "was only perfunctory, in bad faith, a sham, a pretense * * * ".

It is instructive to observe that the Fifth Circuit Court of Appeals has itself rejected the "low standard" of *Williams v Beto* and reinterpreted the right to effective counsel as "counsel reasonably likely to render *and rendering* reasonably effective assistance". (Citation omitted; emphasis in original.) *West v Louisiana,* 478 F2d 1026, 1033 (CA 5, 1973). The Sixth Circuit has likewise rejected the "sham" trial standard by approving the language of *West* and by requiring defense counsel to "perform at least as well as a lawyer with ordinary training and skill in the criminal law * * * ". *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). See also *Bruce v United States,* 126 US App DC 336; 379 F2d 113 (1967).

Thus appears a trend away from the strict "sham" standard. Nevertheless, we believe that a complete reading of *Degraffenreid* relieves any apparent necessity for major surgery on that opinion. It is necessary to recognize the varying implications of the terms "incompetence", "diligence", and "mistake". *Degraffenreid* specifically applies the sham standard where defendant asserts that he was represented by a "bad lawyer", *i.e.,* an incompetent, as revealed by focusing on "the totality of his representation of his client". *Degraffenreid, supra,* 717. However, "[i]t is not the correct standard by which to judge a claim that the defendant is entitled to a new trial because of a serious mistake made by a good lawyer". *Degraffenreid, supra.*

By all appearances, it is this latter type of claim

that defendant brings herein. He does not allege that he was represented by a constitutionally inadequate lawyer manifesting incompetence "grave [enough] to be raised to the constitutional level of no assistance of counsel". *People v Lawrence,* 32 Mich App 591, 594; 189 NW2d 48, 50 (1971). Rather, he maintains that it was counsel's lack of diligence that resulted in a serious mistake sufficient to deny him a fair trial. And in this instance *Degraffenreid* allows a new trial "[w]here the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may * * * grant a new trial". *Degraffenreid, supra,* 716.

"In deciding whether to grant a new trial because of a serious mistake a court applies concepts akin to those implicit in the harmless error rule, balancing the public interest in avoiding purposeless retrials against the defendant's interest in having all his rights recognized and asserted. Ordinarily a new trial will not be granted unless it appears that if a new trial is ordered during the conduct of which the mistake is not repeated the defendant *may very well be acquitted." Degraffenreid, supra,* 718. (Emphasis added.)

In a recent case, *People v Watkins,* 54 Mich App 576, 583; 221 NW2d 437, 441 (1974), this Court held a failure to file timely notice of alibi to be a "serious mistake". Defendant Watkins' conviction was affirmed, however, because of the Court's belief that "even if these witnesses were permitted to testify, defendant would again be convicted * * * ". *Watkins, supra,* 583.

The same conviction cannot be maintained in the instant situation. The trial court in *Watkins* had made a separate record of the proposed witnesses' testimony and concluded that there was a

fatal gap in defendant's alibi. By contrast, we have no indication of the potential testimony of the proposed alibi witnesses. We can neither say that defendant "may very well be acquitted" or "again be convicted" as a function of the admission of this testimony on retrial.

The dispositive consideration in the case before us is that defendant has been deprived of his *only* defense by a serious mistake of informed counsel. No evidence was presented by defendant after the court ruled against admission of alibi testimony. There is no indication in the record that anyone other than counsel should bear the responsibility for failure to satisfy the statute. Accordingly, we are disposed to rule that this defendant did not receive a fair trial. The otherwise unexcused failure of a defense counsel to satisfy the statutory requirement by filing timely notice of alibi is such a serious mistake as to deny a defendant a fair trial in the case where he is thereby deprived of his only defense.

We adopt the method of disposition articulated by the Michigan Supreme Court in *People v Robinson,* 390 Mich 629, 633; 213 NW2d 106 (1973), a case involving prosecutorial failure to indorse and produce a res gestae witness:

"In order to prevent what might possibly be a useless new trial, but also in order to avoid a possible miscarriage of justice, we retain jurisdiction and remand to the trial court pursuant to GCR 1963, 865.1(5)."

This remand was for an evidentiary hearing. We have the same authority under GCR 1963, 820.1(5).

We therefore remand for an evidentiary hearing, and instruct the trial judge to hear and evaluate the proposed testimony of defendant's alleged alibi witnesses. If the trial judge finds that either

of the witnesses is willing to verify defendant's version, defendant is entitled to a new trial. The trial judge may not make any judgment as to whether he thinks the witnesses are in fact telling the truth, for that is a function of the jury upon retrial. *McQueen v Swenson,* 498 F2d 207 (CA 8, 1974). On the other hand, if the witnesses refute defendant's contention, no retrial is necessary, because defendant would not have been deprived of a "substantial" defense.

If the trial judge orders a new trial, this Court does not retain jurisdiction. If the trial judge does not order a new trial, he shall forward his finding and a transcript of the hearing to this Court for our review.

The trial court shall conduct the aforementioned hearing within 30 days of the release of this opinion and shall render his opinion within 30 days of the hearing.

Cause is remanded to the trial court for proceedings in conformance with this opinion.