PEOPLE v FOSTER

1. WITNESSES—CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR
CONVICTIONS—HARMLESS ERROR.

The general rule is that only prior felony convictions can be used
to impeach a witness; however, even if the prosecution does
impeach a witness by use of a misdemeanor conviction, it is not
per se reversible error, and the question becomes whether the
error was harmless beyond a reasonable doubt.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—ASSISTANCE OF COUNSEL—
EFFECTIVE ASSISTANCE—STANDARD.

A criminal defendant is entitled to the effective assistance of
counsel; the standard to determine whether a defendant had
effective assistance of counsel in a criminal trial is that defense
counsel must perform at least as well as a lawyer with ordi-
nary training and skill in the criminal law and must conscien-
tiously protect his client's interests, undeflected by conflicting
considerations.

3. CRIMINAL LAW—PROSECUTOR'S REBUTTAL STATEMENTS—PRESERVING
QUESTION—CURATIVE INSTRUCTIONS—APPEAL AND ERROR.

The Court of Appeals will not consider a claim that a defendant
was prejudiced by a prosecutor's rebuttal statement where no
objection was made at trial, and where the alleged prejudice
could have been rectified by a curative instruction.

4. CRIMINAL LAW—CLOSING ARGUMENT—APPEAL AND ERROR—PROSE-
CUTOR'S STATEMENTS.

The Court of Appeals when reviewing claims of error in a
prosecutor's closing argument reads that portion of the argu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 569 et seq.
[2] 21 Am Jur 2d, Criminal Law § 315.
[3, 4] 30 Am Jur 2d, Evidence § 1022.
    75 Am Jur 2d, Trial § 708.
[5] 75 Am Jur 2d, Trial § 261.
[6] 75 Am Jur 2d, Trial §§ 305, 306.
[7] 75 Am Jur 2d, Trial § 896.

ment against which objection has been raised in light of the full argument; there is no error if the remarks were made primarily in response to matters first raised by defense counsel during his closing argument to the jury or if the remarks were arguments based on the record.

5. CRIMINAL LAW—CLOSING ARGUMENT—PROSECUTOR'S STATEMENTS—
   BELIEF IN GUILT—EVIDENCE.

   The prosecutor may argue in his closing argument that the evidence leads him to believe a defendant is guilty, but he may not express such a belief without relating that belief to the evidence.

6. CRIMINAL LAW—CLOSING ARGUMENT—PROSECUTOR'S STATEMENTS—
   EVIDENCE—CREDIBILITY OF WITNESSES.

   A prosecutor in his closing argument to the jury may not vouch for the evidence; however, he may argue regarding the credibility of witnesses where the testimony conflicts and the result depends on which of the witnesses is to be believed.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRELIMINARY INSTRUC-
   TIONS—APPEAL AND ERROR—STATEMENT OF JUDGE.

   A trial judge's statement in his preliminary instructions to the jury that his mistakes of law could be corrected on appeal was not reversible error, if error at all where (1) the statement was made before the trial began and the judge did not mention the matter again, (2) counsel for a codefendant made a similar statement in his final argument, thereby indicating that he found nothing objectionable about the statement, (3) the predeliberation instructions to the jury impressed upon the jury the importance and solemnity of their duty, and (4) there was ample evidence supporting the jury's verdict finding defendant guilty.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted April 20, 1977, at Detroit. (Docket No. 29567.) Decided August 23, 1977.

King D. Foster was convicted of felony murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, and *Edward R. Wilson,* Research, Training & Appeals, for the people.

*David A. Goldstein,* for defendant on appeal.

Before: V. J. Brennan, P. J., and D. F. Walsh and J. N. O'Brien,* JJ.

V. J. Brennan, P. J. Defendant King Dee Foster was convicted by a Detroit Recorder's Court jury on May 27, 1976, of felony murder, contrary to MCLA 750.316; MSA 28.548. On June 27, 1976, defendant was sentenced to life in prison. He appeals as of right under GCR 1963, 806.1.

At about 8 a.m. on February 13, 1976, Clay Honor, Jr., was shot and killed in Detroit during an attempted robbery. Four disinterested witnesses saw two men run from the shooting to a parked car in which another man was sitting. At least one of the witnesses was able to get the license number of the car and identify the car, but no one was able to positively identify any of the three men. One witness picked two men out of a lineup by their builds, but in court the witness could identify only codefendant Donald Woods.

The car was traced to Karlotta Hill, the girlfriend of Ronald Foster, who is a first cousin of Donald Woods and King Foster. However, the police could find no fingerprints of either Woods or King Foster in the car.

The evidence against the three men was indecisive and, in an effort to break the case, the prosecution offered full immunity to Ronald Foster in exchange for his testimony against Woods and King Foster. Ronald Foster accepted. The order granting immunity was issued on February 25,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1976. Ronald Foster testified at the preliminary examination on February 25, 1976, and codefendants Woods and King Foster were bound over for trial on the charge of first-degree murder. Ronald Foster had previously led police to the murder weapon.

At trial, Ronald Foster testified that on February 13, 1976, he went to King Foster's house after 6:45 a.m. in Karlotta Hill's car. Both Woods and King Foster were there. The three discussed their lack of money and decided to commit a robbery. They drove around for a while and then chose the Home Juice delivery man as their target. Ronald Foster had a gun. When Ronald Foster borrowed the car, King Foster took the gun. Ronald Foster stayed in the car while King Foster and Woods went around the corner. A few seconds later, Ronald Foster heard a shot, and Woods and King Foster came running back to the car. According to Ronald Foster, King Foster said he had to shoot the guy.

Defendants Woods and King Foster took the stand in their defense and testified that Ronald Foster had solicited their participation in an armed robbery on February 13, 1976, but they had refused. King Foster also stated that Ronald Foster told him he had just shot somebody. Both defendants testified that they stayed at King Foster's place until about noon on February 13, 1976. Geraldine Flowers, King Foster's girlfriend, corroborated their testimony.

Defendants Woods and King Foster were subsequently convicted and defendant King Foster raises several allegations of error on appeal.

Defendant first contends that the prosecutor's attempt to impeach defense witness Geraldine Flowers by use of a misdemeanor conviction

amounted to reversible error where defense counsel objected and the court directed the jury to disregard the information.

The general rule in Michigan is that only prior felony convictions can be used to impeach a witness. *People v Renno,* 392 Mich 45, 55; 219 NW2d 422 (1974), *People v Jenkins,* 70 Mich App 234, 235; 245 NW2d 578 (1976), *People v Kelly,* 66 Mich App 634, 636; 239 NW2d 691 (1976).

However, even if the prosecution impeaches a witness by use of a misdemeanor, *Renno* does not establish a per se reversible rule. The error can be harmless. *People v Jenkins, supra,* at 235, *People v McMillan,* 68 Mich App 113, 122; 242 NW2d 518 (1976). Thus, the question becomes whether the error was harmless beyond a reasonable doubt in the present case. We believe that the error was harmless beyond a reasonable doubt. The actual offense was never revealed to the jury, and the question and answer were stricken by the trial judge. Furthermore, the judge's subsequent instruction cured any error possibly caused by the exchange.

Defendant next alleges that the case be remanded to the trial court for an evidentiary hearing on the allegation that he was provided ineffective assistance of counsel at trial.

Michigan law recognizes that a criminal defendant is entitled to the effective assistance of counsel. Traditionally, Michigan courts have applied the two tests of *People v Degraffenreid,* 19 Mich App 702, 711–712; 173 NW2d 317 (1969). Those tests resulted in a new trial only (1) when the prior trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or

without adequate opportunity for conference and preparation; or (2) when the defendant's otherwise constitutionally adequate attorney made a mistake which may have been decisive in obtaining defendant's conviction. *People v Degraffenreid, supra,* at 710, 716. See *People v Hendrix,* 71 Mich App 292, 294–296; 248 NW2d 239 (1976), *People v Battle,* 71 Mich App 136, 143–144; 246 NW2d 389 (1976), *People v Osborn,* 63 Mich App 719, 725–726; 234 NW2d 767 (1975), *People v Karasek,* 63 Mich App 706, 715; 234 NW2d 761 (1975).

However in *People v Lewis,* 64 Mich App 175, 182–183; 235 NW2d 100 (1975), this Court adopted the view expressed in *Beasley v United States,* 491 F2d 687 (CA 6, 1974), and held that a defendant is entitled to have defense counsel investigate, prepare, and assert all substantial defenses. We stated there:

"When defendant is able to show this Court that defense counsel, through failure to investigate and prepare a substantial defense, has deprived defendant of that substantial defense, defendant shall have made a prima facie showing of incompetence." *People v Lewis, supra,* at 183–184.

By substantial, we meant whether the assertion of a defense might have made a difference in the outcome of the trial. *People v Lewis, supra,* at 185.

In *People v Bynum,* 64 Mich App 186, 188–190; 235 NW2d 105 (1975), and *People v Mays,* 64 Mich App 453, 456–458; 236 NW2d 513 (1975), we resolved any potential conflict between *Degraffenreid* and *Lewis.* Specifically, we found in those cases no irreconcilable clash between the different tests, determining that the *Lewis-Beasley* standard is only an example of *Degraffenreid's* second test. Subsequently, in *People v Garcia,* 398 Mich 250,

266; 247 NW2d 547 (1976), the Michigan Supreme Court also specifically adopted the *Beasley* test and rejected the first *Degraffenreid* test.

Applying the *Garcia-Beasley-Degraffenreid* standard, then, we find no merit to the claim that defense counsel committed a decisive mistake requiring retrial when he failed to interview witness Flowers until the day before trial. Though we do not believe waiting so long to interview a witness advisable, we are not willing to say such delay amounted to the kind of mistake that the Court in *Garcia* indicated entitled defendant to a new trial. *People v Garcia, supra,* at 266.

Nor do we believe defense counsel deprived defendant of a substantial defense when he failed to secure the presence and testimony of certain persons with supposedly exculpatory information. See *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). We do find that defense counsel attempted to secure the testimony of informant Leo Bryant and Officer John Huggins. Bryant had apparently heard some discussion indicating the complicity of other persons in the crime. This information was written down by Officer Huggins on February 14, 1976. Though defense counsel diligently produced both informant Bryant and Officer Huggins at trial, the trial court ruled to exclude their testimony as hearsay.

We do not believe defense counsel's failure to pursue this incident amounts to ineffective assistance of counsel. Counsel did attempt to obtain the testimony of witnesses with whom he was familiar. The fact that he did not or could not follow the sources beyond informant Bryant and Officer Huggins does not show ineffective assistance of counsel. No certainty exists on the record as to the reliability of informant Bryant nor the accuracy of

the information he provided Officer Huggins. We will not order retrial on the strength of these facts.

Finally, we find without substance defendant's claim of ineffective assistance due to defense counsel's failure to move to suppress defendant's brown leather coat as evidence. Even assuming that the coat could have been suppressed, we find any possible error harmless. Other evidence in the case is more than sufficient to sustain the conviction. The coat was a minor piece of evidence at most. *People v Hendrix, supra,* at 294–296.

Defendant next assigns as reversible error the prosecutor's rebuttal statement "Thank the good God that we were able to get the truth".

No objection was raised at the time of the rebuttal argument and so we will not consider the claim if the alleged prejudice could have been rectified by a curative instruction. *People v Gould,* 61 Mich App 614, 625–626; 233 NW2d 109 (1975). When reviewing claims of error in a prosecutor's closing argument, we read that portion against which objection has been raised in light of the full argument. *People v Cowell,* 44 Mich App 623, 627; 205 NW2d 600 (1973). We will find no error if the remarks were made primarily in response to matters first raised by defense counsel during his closing argument to the jury, *People v Pomranky,* 62 Mich App 304, 310–311; 233 NW2d 263 (1975), or if the remarks were arguments based on the evidence, *People v Yarborough,* 61 Mich App 303, 308; 232 NW2d 394 (1975).

Generally, the prosecutor may argue that the evidence leads him to believe defendant is guilty, but he may not express a belief in the defendant's guilt without relating that belief to the evidence. *People v Humphreys,* 24 Mich App 411, 414; 180

NW2d 328 (1970). In the present case, the statement to which objection is raised occurred after codefendant Woods' defense counsel had argued that Ronald Foster testified against his cousins merely to save himself, and after both defense counsel pursued Ronald Foster's immunity status. In response, the prosecution explained that without Ronald Foster's testimony, no case against either defendant could have been brought. He said the prosecution tried to make the best of a bad bargain, and concluded:

"the only reason we know about these two is because of the other one that was involved.

"God moves in somewhat mysterious ways to bring the truth out. Thank the good God that we were able to get the truth."

Though the statement itself is difficult to characterize, we do not believe reversible error occurred. The statement does not fall within the ususal framework of prosecutorial belief in a defendant's guilt. No comment appears such as "the defendant is guilty". The statement does not refer to any particular truth, but, importantly, is tied to the testimony of Ronald Foster. Further, the "we" is sensibly read as referring to the judicial process or the jury and not the prosecutor and God as claimed by defendant. Finally, the comment appears to be directed more at the availability and credibility of Ronald Foster's testimony than at the defendant's guilt.

If the statement is directed at the credibility of Ronald Foster's testimony, then defendant has addressed the wrong issue. A prosecutor may not vouch for the evidence or place the weight of his office behind the prosecution; but, as here, he may argue regarding the credibility of witnesses where

the testimony conflicts and the result depends on which of the witnesses is to be believed. *People v Embry,* 68 Mich App 667, 671; 243 NW2d 711 (1976). We do not find reversible error when the problem is viewed from this perspective.

In short, the prosecution's statement does not submit to any crisp analysis. The statement is difficult to characterize. However, under either characterization discussed, we find no reversible error. Further, if error there was, we firmly believe that a timely objection and a curative instruction could adequately have corrected any possible prejudice to defendant. Accordingly, the error was harmless.

Defendant contends in the next instance that the prosecution's implication in rebuttal that defendants made sure no fingerprints remained on the get-away car amounted to reversible error in spite of the fact both defense counsel made much of the lack of fingerprint evidence in their final arguments.

Defendant Foster's counsel did not object to the statement, though codefendant Woods' counsel did. Therefore, technically, the issue is not preserved.

However, even if the issue had been preserved, defendant's counsel is the party who emphasized the issue during trial and re-raised and emphasized it again in closing argument. He argued that the lack of prints exonerated his client. The prosecution responded:

"And of course there has been a lot of talk about the fingerprints in the car, and so forth. You have to remember that the car was picked up about three days after it was used in the shooting, according to the testimony. And there seems to be a lot of talk about no prints in the car. So obviously whoever brought it up on questioning, and so forth, must have known that there

wouldn't be any prints. And who else would have known there wouldn't be any prints better than anybody who took care to make sure that there wouldn't be any prints."

The last sentence is really a question made in response to defense counsel's argument. Generally, remarks induced by and made in response to statements made by defense counsel are not subject to reversal. *People v Pomranky, supra,* at 310–311. Further, the prosecution may draw reasonable inferences from the evidence. See *People v Fields,* 66 Mich App 347, 352; 239 NW2d 372 (1976). Consequently, as we believe the prosecution was merely offering another theory for the missing prints, we find no grounds to reverse. Moreover, the trial judge properly noted that the jury would decide which theory was correct. Defendant has no basis to object here.

Defendant finally alleges that the trial court committed reversible error by making the statement that "if he [the judge] is wrong [on questions of law], we have higher courts that will reverse him".

No objection was made to the preliminary instruction by the court. Therefore, the issue has not been preserved for appeal. See *People v Williams,* 29 Mich App 420, 425; 185 NW2d 435 (1971). We nevertheless review the matter to determine if manifest injustice appears on the record.

The precise question we are asked to review has not been previously decided by Michigan courts. Certainly, we believe that a jury's responsibility is serious and should not be lessened by comments which indicate that their decision is only tentative and reviewable. However, the question presented here is whether the judge's statement that his

mistakes of law could be corrected on appeal amounted to prejudicial error.

In searching for authority on this question, we discovered one decision in the State of Oregon which closely corresponds to the situation we review here. *State v Clark*, 227 Or 391; 362 P2d 335 (1961). In *Clark*, defendant was convicted of rape and the trial court instructed the jury in the following way:

" 'The duty of the Court is to instruct you as to the law applicable to the case, and it is your sworn duty to follow the law as this Court gives it to you at this time. *If the defendant here is dissatisfied with the rulings of this Court as to the law, he has the right of appeal to the Supreme Court and that Court can correct any mistakes which this Court may make as to the law of the case,* so if you have opinions of your own which conflict with what this Court tells you is the law of the case, you must lay them aside. You obligated yourselves by your oaths to accept the law as I give it to you, and you must do that. I cannot comment on the facts of the case. In other words, I cannot invade your province and you must not invade mine, but we must each perform our respective duties' ". 227 Or at 392. (Emphasis in 227 Or.)

After referring to cases in other states, the Oregon Supreme Court concluded:

"The question is one of first impression in Oregon. It is common knowledge among the bar that many of Oregon's ablest trial judges have, for years, employed words similar to those challenged in the case at bar, not with the intent to cause a jury to shirk its responsibility in deciding the facts, but rather with the intent to impress upon the jury its responsibility to accept the law as it comes from the court.

"After examining the authorities cited, we are of the opinion that the challenged portion of the instruction

should not have been given. It may be debatable whether such words merely tell the jury something they already know, or whether such an instruction indeed could have the tendency supposed by the defendant in this case. Nevertheless, when a jury is told that a higher court will correct any error of law, one or more jurors might erroneously believe that the defendant will have a hearing *de novo* in the Supreme Court. *People v Silverman,* 252 App Div 149, 297 NYS 449 [1937]. The possibility of prejudice is sufficient reason to discontinue the practice of giving such an instruction.

"It does not follow, however, that the present case must be reversed. The record reveals that the challenged instruction was part of an exceptionally able charge to the jury. We cannot read the record without being impressed with the solemnity of the duty imposed upon that jury and the fairness with which the trial judge conducted the proceedings. It is not every error which justifies reversal. There must be prejudice. * * * [Citations omitted.]

"In reviewing the evidence in the case at bar we cannot say either that there was prejudice in the challenged instruction, or that any inference of prejudice is justifiable. The defendant admitted intercourse but denied force. There was impartial medical evidence as well as other proof of force. On the entire record, we hold that the error in giving the challenged instruction was not reversible." *State v Clark, supra,* at 393–394.

The circumstances we face in this appeal present an even weaker case for reversal than did *Clark.* The trial court in this case made the allegedly prejudical statement before the trial began and did not mention the matter again. Further, codefendant Woods' counsel made a similar statement in his final argument, thereby indicating that he found nothing objectionable about the statement. Finally, we find the trial court's predeliberation instructions to the jury impressed upon the jury the importance and solemnity of their duty. In light of these factors and the evidence,

even if the statement was error, we find the error harmless.

Having reviewed defendant's various allegations of error, and finding none persuasive, we sustain defendant's conviction.

Affirmed.