# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TREVOR WILLIAM-EUGENE HEWITT,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 324117
Branch Circuit Court
LC No. 13-111049-FH

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Trevor William-Eugene Hewitt, appeals by right his jury convictions of two counts of being a prisoner in possession of a weapon. See MCL 801.262(2). The trial court sentenced Hewitt as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 43 to 120 months on each conviction. Because Hewitt has not established any errors at trial that warrant relief, we affirm.

The jury found Hewitt guilty of possessing two weapons in jail cell B68 at the Branch County jail: a portion of a T-shirt that had been knotted and fashioned into a "strangulation device" and a towel containing four batteries, which is referred to as a "sap." At trial, Hewitt argued that the knotted T-shirt was left in the cell by a previous inmate, Cody Savage, and that the towel containing batteries was not a weapon.

## I. INEFFECTIVE ASSISTANCE

Hewitt first argues that his trial lawyer's failure to call Savage as a witness amounted to ineffective assistance. Because the trial court did not hold an evidentiary hearing to determine the facts underlying this claim of error, our review is limited to mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. In order to establish error warranting relief, Hewitt must show that his lawyer's decision fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional error, the outcome of his trial would have been different. *Id.* at 22.

-1-

In this case, there is evidence that Savage previously occupied the cell at issue. A corrections officer, Wesley Pope, also testified at the preliminary examination that, as he questioned Hewitt about the knotted T-shirt at the jail, Savage "volunteered" that the knotted T-shirt was his and that he had left it in B68. At trial, Hewitt's lawyer attempted to question Pope about Savage's statement, but the trial court sustained the prosecution's hearsay objection. Hewitt now maintains that his lawyer should have called Savage directly to testify about the T-shirt.

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Indeed, if we can conceive of a legitimate strategic reason for Hewitt's lawyer's decision under the known facts, we must conclude that the decision was within the range of reasonable professional conduct. *Gioglio*, 296 Mich App at 22-23.

Hewitt has the burden to establish the factual predicate for his claim of error on appeal, but he has not presented any evidence that Savage would have testified favorably to him, if called. *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001). Moreover, even if Hewitt's lawyer could have questioned Pope about Savage's statement after calling Savage to testify, see, e.g., MRE 804(b)(3), it is not reasonably probable that the admission of the hearsay statement would have altered the outcome of the trial. *Gioglio*, 296 Mich App at 22. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

There was testimony at trial that Savage was a volatile inmate who had previously "destroyed" the cell. And the totality of the circumstances surrounding Savage's claim of ownership suggest that he blurted out his statement in order to interfere with Pope's investigation. Further, Rhonda Nadle and Richard Fillmore, two jail corrections officers, both testified that B68 was completely searched and cleaned after Savage was removed from the cell. Pope opined that it was nearly impossible that a maintenance worker or other inmate concealed the knotted T-shirt under the stool in B68, and Nadle and Fillmore both stated that they inspected the underside of the stool after Savage was removed from the cell and found nothing. In light of these facts, even had the jury heard Savage's claim of ownership, it is not reasonably likely that the jury would have reached a different result on the charge related to the T-shirt. *Id.*

## II. SUFFICIENCY OF THE EVIDENCE

Hewitt next argues that his convictions were not supported by sufficient evidence. This Court reviews a challenge to the sufficiency of the evidence by reviewing the "record evidence de novo in the light most favorable to the prosecution" and determining "whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

A prisoner is generally prohibited from possessing or having "under his or her control any weapon or other item that may be used to injure a prisoner or other person, or used to assist a prisoner in escaping from jail." MCL 801.262(2); *People v Gratsch*, 299 Mich App 604, 616; 831 NW2d 462 (2013), vacated not in relevant part 495 Mich 876.[1]

Hewitt conceded that the towel and batteries were his and Pope testified that, in his opinion, the towel containing batteries, as he found it, could be grabbed and swung as a weapon. The jury was free to conclude from this testimony that Hewitt possessed the towel with the batteries and that it was configured for use as a weapon or constituted an item that may be used to injure a prisoner or other person. See *Roper*, 286 Mich App at 88.

The prosecution also presented evidence from which the jury could rationally infer that Hewitt purposely possessed or controlled the knotted T-shirt. *Gratsch*, 299 Mich App at 616. Nadle and Fillmore testified that cell B68 was completely searched and cleaned before Hewitt was moved there. Both officers testified that they checked under the cell's metal stools and found nothing. Nadle stated that all maintenance personnel had been fully monitored while repairing the cell, and Pope opined that it was nearly impossible that anyone other than Hewitt placed the knotted T-shirt in the cell.

The prosecution also presented evidence sufficient to allow the jury to reasonably conclude that the knotted T-shirt was a "weapon or other item that may be used to injure" another person. MCL 801.262(2). Pope described the item as "what appeared to be a section of tee-shirt that had been torn into some sort of a rope with knots on the end"; he further termed the item a "strangulation device." The knotted T-shirt itself was introduced into evidence and Hewitt does not allege that Pope's description of the item was inaccurate. And we must defer to the jury's apparent decision to credit Pope's testimony and similarly conclude that the item was a "strangulation device" capable of injuring a person. *Roper*, 286 Mich App at 89 (stating that this Court will not second-guess the jury's determinations). Viewing the evidence in the light most favorable to the prosecution, *id*. at 83, there was sufficient evidence to allow the jury to rationally conclude that the knotted T-shirt was a "weapon" within the meaning of MCL 801.262(2).

## III. INSTRUCTIONAL ERRORS

Hewitt next argues that the trial court erred in instructing the jury. Specifically, he asserts that the trial court failed to instruct the jury on the essential "authorization" element and that the court impermissibly characterized the items at issue as a "sap" and "strangulation device," or "weapon." We review these unpreserved claims for plain error. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

---

[1] We reject Hewitt's argument that the prosecution was required to prove that he was not "authorized" to possess a weapon because Hewitt presented no evidence that he was authorized to possess the items as configured. See *People v Perry*, 145 Mich App 778, 785; 377 NW2d 911 (1985).

Contrary to Hewitt's assertion, "authorization" is not an element of the crimes as charged and he presented no evidence tending to suggest that he was authorized to possess the items in a configuration that permitted the items to be used as a weapon. See *People v Perry*, 145 Mich App 778, 785; 377 NW2d 911 (1985). Therefore, the trial court cannot be faulted for failing to give an "authorization" instruction. The trial court also did not commit any errors amounting to plain error warranting relief when it in passing characterized the two items as a "sap," "strangulation device," or "weapon." In reviewing the instructions as a whole, this phrasing was limited and the trial court instructed the jury that it was required to find that both items were "weapons" within the meaning of MCL 801.262(2). It also instructed the jury that its comments were not evidence. Accordingly, if the comments were erroneous, any prejudice was minimal and does not warrant relief. *Aldrich*, 246 Mich App at 124-125. Likewise, Hewitt's lawyer was not ineffective for failing to object to these alleged errors because in one case there was no error and, in the other case, any error would not warrant relief. *Gratsch*, 299 Mich App at 617; *Gioglio*, 296 Mich App at 22.

## IV. PROSECUTORIAL ERROR

Hewitt additionally argues that the prosecutor improperly prejudiced his trial when he picked up the towel containing batteries and struck a table, thereby demonstrating its ability to be wielded as a weapon. This Court reviews claims of prosecutorial error to determine whether the prosecutor's acts or omissions denied the defendant a fair trial. *Dunigan*, 299 Mich App at 588.

"In general, prosecutors are afforded great latitude regarding their arguments and *conduct* during closing argument." *People v Bosca*, 310 Mich App 1, 34-35; 871 NW2d 307 (2015) (quotation marks and citation omitted; emphasis added). "Generally, remarks induced by and made in response to statements made by defense counsel are not subject to reversal." *People v Foster*, 77 Mich App 604, 614; 259 NW2d 153 (1977). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial *conduct* or remarks might not require reversal if they address issues raised by defense counsel." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007) (citation omitted; emphasis added).

The prosecutor here demonstrated the possible use of the towel and batteries as a weapon in direct response to an argument raised by Hewitt's trial lawyer. In closing, Hewitt's trial lawyer argued that the towel containing batteries could not be used as a weapon, particularly because Pope testified that, when he picked it up, it "fell apart." The prosecutor countered this contention by demonstrating that the towel containing batteries could in fact be used as a weapon. While the conduct of the prosecutor was allegedly charged with emotion (which is unclear from the transcript), prosecutors are not required to "phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). Therefore, there was no prosecutorial error. Moreover, even if we were to conclude that it was error for the prosecutor to demonstrate the use of the towel and batteries in this way, we cannot conclude that the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *People v Blackmon*, 280 Mich App 253, 262; 761 NW2d 172 (2008). Accordingly, there was no prosecutorial error warranting relief.

## V. SUBSTITUTE COUNSEL

Hewitt also argues on his own behalf that the trial court erred when it denied his motion for substitute appointed counsel. "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). An indigent defendant is not entitled to substitute counsel unless he can demonstrate "good cause" for substitution. *Id.*

Having reviewed Hewitt's arguments and the record, we can discern no good cause, which would have required the trial court to provide substitute counsel. There is no indication that Hewitt's lawyer failed to communicate any plea offers or proceeded against Hewitt's wishes. There is no evidence in the record that Hewitt's lawyer made disparaging comments about him. Finally, Hewitt was not entitled to relief under the 180-day rule, MCR 6.004(C), at the time the trial court denied his request for substitute counsel, and Hewitt did not renew his motion for substitute counsel at any point after he had been incarcerated for 180 days or more. Accordingly, the trial court did not abuse its discretion in denying his request for substitute counsel.

There were no errors warranting a new trial.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly